1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LEE EDWARD PEYTON,                         No.  2:21-cv-0719 JAM KJN P

12                  Plaintiff,

13        v.                                     ORDER

14   BRIAN KIBLER, et al.,

15                  Defendants.

16

17        Plaintiff is a state prisoner, proceeding pro se, in an action brought under 42 U.S.C.

18   § 1983.  Plaintiff's motion to compel production of documents and request for sanctions, fully

19   briefed, is now before the court.  As set forth below, the undersigned partially grants plaintiff's

20   motion to compel discovery, and grants modification of the scheduling order.

21   I.  Plaintiff's Allegations

22        This case proceeds on plaintiff's complaint against defendants Kibler, Pickett, Peery, and

23   Pannu for their alleged failure to protect plaintiff in violation of the Eighth Amendment by

24   causing plaintiff to be exposed to COVID-19 "during his entire confinement" at High Desert

25   State Prison ("HDSP").[1]  (ECF No. 1 at 18.)  Plaintiff alleges that despite his verbal complaints to

26   ───────────────────

27   [1]  In his deposition, plaintiff testified that he was housed in Facility D, Building 2, from October
     10, 2020, to October 24, 2022; he was transferred to Facility D, Building 4, where he remained
     until his transfer away from HDSP on May 27, 2021.  (Pl.'s Dep. at 24.)  But he also testified that
28   "on the 15th of the last month" he was moved from Facility D to Facility E.  (Pl.'s Dep. at 22.)

1

correctional officers and other prison staff, as well as multiple grievances and letters alerting

defendants to such health and safety violations, numerous correctional officers and porters at

HDSP continued to serve breakfast and dinner meals without wearing masks over their mouths

and noses.  Indeed, plaintiff sets forth specific instances from October 17, 2020, through April 18,

2021,[2] in which he alleges he was served meals by officers and porters who were not properly

wearing masks.  (ECF No. 1 at 8-15.)  Plaintiff contracted COVID-19 twice,[3] and was fearful he

would contract it again.  (ECF No. 1 at 16-17.)  In addition, plaintiff alleges that defendants

Kibler, Pickett and Peery had actual knowledge of the alleged hazardous conditions yet tolerated

a deliberately indifferent policy and custom of exposure and spreading of COVID-19, and refused

to take reasonable measures to prevent defendant Pannu and other officers and porters from

handling and serving meals without properly wearing face masks covering their mouths and

nostrils.  (ECF No. 1 at 18.)  Plaintiff seeks money damages and injunctive relief, including an

order enjoining defendants from continuing their policy and custom of serving meals without face

masks covering the servers' mouths and noses.  (ECF No. 1 at 11, 19.)

## II.  Plaintiff's Motion to Compel

Plaintiff seeks to compel production of documents and answers to interrogatories.  (ECF

Nos. 41 & 42.)

### A.  Applicable Legal Standards

Under Rule 37 of the Federal Rules of Civil Procedure, "a party seeking discovery may

move for an order compelling an answer, designation, production, or inspection."  Fed. R. Civ. P.

37(a)(3)(B).  Such "motion may be made if:  (i) a deponent fails to answer a question asked under

Rule 30 or 31; (ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or

---

However, plaintiff's complaint (ECF No. 1 at 8) and all of the discovery requests and responses refer to plaintiff's housing in Facility B of HDSP.  The previously filed declarations of Lt. DeForest also refer to Facility B.  (ECF Nos. 18 at 40; 32 at 10.)  The undersigned will use Facility B.

[2]  Plaintiff's complaint is dated April 17, 2021.  (ECF No. 1 at 19-21.)

[3]  In his deposition, plaintiff testified that he did not contract COVID-19 a second time.  (Pl.'s Dep. at 29:1-6.)

31(a)(4); (iii) a party fails to answer an interrogatory submitted under Rule 33; or (iv) a party fails to produce documents or fails to respond that inspection will be permitted -- or fails to permit inspection -- as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). "District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'" Hunt v. Cnty. of Orange, 672 F.3d 606, 616 (9th Cir. 2012) (quoting Avila v. Willits Envtl. Remediation Trust, 633 F.3d 828, 833 (9th Cir. 2011)).

Plaintiff bears the burden of informing the court (1) which discovery requests are the subject of his motion to compel, (2) which of the responses are disputed, (3) why he believes the response is deficient, (4) why defendants' objections are not justified, and (5) why the information he seeks through discovery is relevant to the prosecution of this action. McCoy v. Ramirez, 2016 WL 3196738 at *1 (E.D. Cal. 2016); Ellis v. Cambra, 2008 WL 860523, at *4 (E.D. Cal. 2008) ("Plaintiff must inform the court which discovery requests are the subject of his motion to compel, and, for each disputed response, inform the court why the information sought is relevant and why defendant's objections are not justified.").

The reach of Rule 34 of the Federal Rules of Civil Procedure, which governs requests for production, "extends to all relevant documents, tangible things and entry upon designated land or other property." Clark v. Vega Wholesale Inc., 181 F.R.D. 470, 472-73 (D. Nev. 1998), citing 8A C. Wright & A. Miller, Federal Practice and Procedure § 2206, at 381. "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). The responding party is responsible for all items in "the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Actual possession, custody or control is not required. Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995). "The party seeking production of the documents bears the

1    burden of proving that the documents are in the other party's possession, custody, or control."

2    Philippe Charriol Int'l Ltd. v. A'lor Int'l Ltd., 2016 WL 7634440, at *2 (S.D. Cal. Mar. 10, 2016)

3    (citing United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO, 870 F.2d 1450,

4    1452 (9th Cir. 1989)).

5         The purpose of discovery is to "remove surprise from trial preparation so the parties can

6    obtain evidence necessary to evaluate and resolve their dispute."  U.S. ex rel. O'Connell v.

7    Chapman University, 245 F.R.D. 646, 648 (C.D. Cal. 2007) (quotation and citation omitted).

8    Rule 26(b)(1) of the Federal Rules of Civil Procedure offers guidance on the scope of discovery

9    permitted:

10            Parties may obtain discovery regarding any nonprivileged matter that
             is relevant to any party's claim or defense and proportional to the
11            needs of the case, considering the importance of the issues at stake
             in the action, the amount in controversy, the parties' relative access
12            to relevant information, the parties' resources, the importance of the
             discovery in resolving the issues, and whether the burden or expense
13            of the proposed discovery outweighs its likely benefit.  Information
             within this scope of discovery need not be admissible in evidence to
14            be discoverable.

15   Id.  "Relevance for purposes of discovery is defined very broadly."  Garneau v. City of Seattle,

16   147 F.3d 802, 812 (9th Cir. 1998).  "The party seeking to compel discovery has the burden of

17   establishing that its request satisfies the relevancy requirements of Rule 26(b)(1).  Thereafter, the

18   party opposing discovery has the burden of showing that the discovery should be prohibited, and

19   the burden of clarifying, explaining or supporting its objections."  Bryant v. Ochoa, 2009 WL

20   1390794 at *1 (S.D. Cal. May 14, 2009) (internal citation omitted).

21                          Interrogatories

22        Rule 33 of the Federal Rules of Civil Procedure provides that a party may serve upon

23   another party written interrogatories that relate to any matter that may be inquired into under Rule

24   26(b).  Fed. R. Civ. P. 33(a).  "Each interrogatory must, to the extent it is not objected to, be

25   answered separately and fully in writing under oath."  Fed. R. Civ. P. 33(b)(3).  The person who

26   answers interrogatories must verify the responses by signing them.  Fed. R. Civ. P. 33(b)(5); see

27   also Hash v. Cate, 2012 WL 6043966, at *3 (N.D. Cal. Dec. 5, 2012) ("interrogatory responses. . .

28   must contain facts, and the party responding must verify that those facts are true and correct to the

                                              4

1  best of his knowledge").

2  <u>Request for Production of Documents</u>

3        With respect to requests for production, a party may propound requests for production of

4  documents that are within the scope of Federal Rule of Civil Procedure 26(b).  Fed. R. Civ. P.

5  34(a).  A party objecting to a request for production must state the reasons for the objection.  Fed.

6  R. Civ. P. 33(b)(2)(B).

7  <u>Local Rule 251</u>

8        As set forth in the court's scheduling order, "unless otherwise ordered, Local Rule 251

9  shall not apply."  (ECF No. 34 at 5.)

10     B.  <u>Elements of Plaintiff's Underlying Claims</u>

11        A "failure to protect" claim under the Eighth Amendment requires a showing that "the

12  official [knew] of and disregard[ed] an excessive risk to inmate. . . safety."  <u>Farmer v. Brennan</u>,

13  511 U.S. 825, 837 (1994).  Because "only the unnecessary and wanton infliction of pain

14  implicates the Eighth Amendment," evidence must exist to show the defendant acted with a

15  "sufficiently culpable state of mind."  <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991) (internal

16  quotation marks, emphasis and citations omitted).  Under an Eighth Amendment failure to protect

17  claim, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question

18  of fact subject to demonstration in the usual ways, including inference from circumstantial

19  evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from

20  the very fact that the risk was obvious."  <u>Farmer</u>, 511 U.S. at 842 (citations omitted).  The duty to

21  protect a prisoner from serious harm requires that prison officials take reasonable measures to

22  guarantee the safety and wellbeing of the prisoner.  <u>Id.</u> at 832-33; <u>Frost v. Agnos</u>, 152 F.3d 1124,

23  1128 (9th Cir. 1998).

24     C.  <u>Initial Disclosures Not Required</u>

25        Contrary to plaintiff's argument (ECF No. 41 at 3), defendants were not required to

26  provide plaintiff with initial disclosures under Rule 26(a) of the Federal Rules of Civil Procedure.

27  Because plaintiff is a prisoner proceeding without counsel, initial disclosures are not required.

28  Fed. R. Civ. P. 26(a)(1)(B)(iv).

D. Scope of Discovery

The undersigned is not persuaded by defendants' argument that plaintiff's claims end on the day he contracted COVID-19.  It is public knowledge that it is possible to be reinfected with COVID-19.  Plaintiff alleges that he was placed at risk of infection and reinfection by prison staff and porters failing to properly wear masks during meal service at HDSP; plaintiff was not free of such risk until he was transferred away from HDSP.  (ECF No. 26 at 5.)  Moreover, plaintiff alleges that defendants were made aware of the improper mask wearing through a "large number of complaints and grievances," including letters and verbal complaints, as well as the November 2020 findings that issued in Plata v. Newsom, No. 4:01-cv-1351 JST (N.D. Cal. Nov. 20, 2020) (ECF No. 3492).  (ECF No. 1 at 17.)  Further, plaintiff alleged that defendants viewed video evidence in connection with plaintiff's complaints about improper mask wearing.  (ECF No. 1 at 17.)  Thus, plaintiff's discovery requests are not as narrow as defendants contend, and their objections on such bases are overruled.

E. Unclean Hands

Plaintiff objects that defendants violated his rights when they used his medical records to oppose plaintiff's motion for preliminary injunction and case-related sanctions to discuss plaintiff's infection with COVID-19.  (ECF No. 42 at 3.)  However, plaintiff's objection is overruled because his complaint alleged he had been infected with COVID-19 on two occasions, thus putting his infection at issue in the public record.  Moreover, defendants were entitled to rebut plaintiff's claim that he had been infected twice, when at his deposition he confirmed he was infected only once at HDSP.

F. Request for Production of Documents

Plaintiff seeks to compel further responses to Request for Production, Set One, Requests Nos. 3 to 14.  (ECF No. 41 at 4, Ex. 4; 31-33; 42-48 (Pl.'s Exs. 2 and 5).)

First, "[s]tate privilege doctrine, whether derived from statutes or court decisions, is not binding on federal courts in these kinds of cases."  Kelly v. City of San Jose, 114 F.R.D. 653, 655 (N.D. Cal. 1987).  Accordingly, the undersigned does not address the privileges asserted in the privilege log based on California law.

6

Second, as argued by defendants, plaintiff is required to specifically analyze each request and the objection asserted rather than interpose broad and conclusory statements.  Plaintiff did not do so.  Rather, he offered general arguments without separately addressing each challenged discovery request or specifically addressing each objection contained within each discovery request.  Because plaintiff is proceeding pro se, the court has endeavored to evaluate his motion, but in the future, plaintiff should separately address each discovery request he challenges, including each objection.

Third, in plaintiff's reply, he contends that defendants' failure to controvert any of the facts contained in plaintiff's declaration," failure to provide pertinent documents or to "address or controvert plaintiff's arguments and theories of why the documents sought are relevant and indispensable," means "they must be deemed admitted for purposes of this proceeding."  (See, e.g., ECF No. 55 at 5, 9, 14.)  Plaintiff is mistaken.  The discovery responses at issue here were not requests for admissions.  Fed. R. Civ. P. 36.  As explained above, requests for production of documents are governed by Rule 34; plaintiff's recourse for challenging responses is to file a motion to compel, which he did.  Further production of documents will either be ordered, or defendants' objections will be sustained.

The court turns now to the disputed requests for production of documents ("RPD").

> RPD No. 3:  "All surveillance video that evidence, mention, or refer to, or footage depicting the interior of Facility B, building 4, during periods of time when morning and evening meals are serving during the period of October 2020 through May 30, 2021, including but not limited to HDSP records, reports, statements and other investigative materials, and documents relating to prisoner grievances and including responses to such grievances prepared by HDSP staff in connection with the surveillance video footage during the period between October 202[0] and May 30, 2021.

> Response:   Objection. The request is overbroad as to time, not relevant to the claims and defenses in this case, is unduly burdensome and is not proportional to the needs of the case. The request is invasive of the privacy rights of non-party correctional staff members and inmates. The request further violates the official information privilege. The request seeks personal and private information of staff members or materials that constitutes personnel information, which is confidential. California Information Practices Act, Civil Code § 1798, et seq.; Cal. Gov't Code 3300-3313; California Code of Regulations, tit. 15, § 3321, 3450; and 3370.

1

2

3

4

> Without waiving these objections, Defendants state: Defendants have made a reasonable inquiry and conducted a diligent search with respect to surveillance video obtained prior to February 10, 2021, and are no longer in possession, custody or control of video responsive to this request. The video obtained subsequent to February 10, 2021, is not relevant to the claims and defenses in this case and will not be produced.

5

(ECF No. 41 at 42-43.)

6

<u>Surveillance Video Prior to February 10, 2021</u>

7

8

9

10

11

12

13

14

15

16

17

18

Initially, the undersigned observes that in connection with plaintiff's earlier motion for injunctive relief, M. DeForest, Correctional Lieutenant with the Investigative Services Unit ("ISU") provided a declaration in which he declared that he directed that all available surveillance footage depicting the interior of Facility B, Building 4, during the periods of time when the morning and evening meals were served, obtained through April 30, 2021, be preserved.  (ECF No. 18 at 40.)  Because ISU was unaware of a request to preserve surveillance video of Facility B, Building 4, prior to receiving the May 10, 2021 order, DeForest declared that "it is likely that surveillance video from this location prior to February 10, 2021, has not been preserved."  (ECF No. 18 at 41.)  "In the absence of a request presented to ISU, an inmate claim with the Victims Compensation and Government Claims Board, a request from the Office of Grievances, or an Allegation Inquiry Management System request, recorded data is preserved for ninety days of a[] reported event and then is recorded over."  (ECF No. 18 at 41-42.)

19

20

By order filed July 29, 2021, defendants were ordered to comply with their legal duty to preserve evidence, which included preserving video through May 30, 2021.  (ECF No. 26 at 8.)

21

22

23

24

Second, on October 11, 2021, Lt. DeForest provided a second declaration in connection with the opposition to plaintiff's motion for case-dispositive sanctions.  (ECF No. 32 at 9-10.) DeForest confirmed what triggers the preservation of surveillance video by ISU.  (ECF No. 32 at 9.)  DeForest declared that:

25

26

27

28

> ISU did not receive a request to preserve surveillance video of Facility B, Building 4, prior to receiving the court's May 10, 2021 order, and was unaware of any events which would trigger a longer retention period prior to that date.  For this reason, video generated prior to February 10, 2021 concerning this building was not preserved because of a lack of knowledge on the part of ISU that it needed to be preserved, and was not destroyed willfully with

8

1      knowledge of Plaintiff's claim or in bad faith.

2   (ECF No. 32 at 10.)  Plaintiff argues that DeForest's declaration does not dispute or deny that ISU

3   followed the established procedures for handling audio/video surveillance system evidence

4   requests or deny that ISU stored a second copy of the video, and therefore the non-existence of

5   the video remains at issue.  (ECF No. 55 at 6.)  But plaintiff misreads DeForest's declaration.

6   DeForest declares that no request to preserve evidence was received by ISU.  Because no such

7   request was received, there would be no requirement for ISU to store the video, either a first or

8   second copy.  Whether or not other prison staff failed to follow protocol in requesting that the

9   video be preserved by ISU is a separate issue.

10      Plaintiff suggests that the surveillance video was destroyed and that "defendants

11   improperly refused to produce any authorizations for the destruction of surveillance video

12   records."  (ECF No. 41 at 8.)  But Lt. DeForest explained that absent a request to preserve

13   surveillance video, video is recorded over after ninety days.  (ECF No. 18 at 41-42.)  DeForest's

14   declaration supports defendants' response that no responsive document exists.

15      At bottom, the video prior to February 10, 2021, was not preserved by the ISU.

16      In addition, defendants also searched for but did not find such video.  In his reply, plaintiff

17   contends that "the defendants reviewed video in connection with two of his grievances."  (ECF

18   No. 55 at 6.)  Plaintiff does not identify the specific defendant or the log numbers for either

19   grievance.  Nevertheless, it is not clear that reviewing video in connection with a grievance

20   always results in a request to preserve evidence.  Arguably, one would need to review

21   surveillance video before determining whether preservation was appropriate.

22      The record makes clear that the video prior to February 10, 2021, was not preserved.

23   (ECF No. 38.)[4]  Plaintiff's request to produce such unpreserved video is unavailing.  The motion

24   to compel further production of such video is denied.

25

26   [4]  Indeed, "defendants concede that plaintiff's inmate grievances were sufficient to put the prison
    on notice that the alleged incidents were captured on video, and that the policy in place in 2020
27   required the video to be retained for a longer period due to the alleged staff misconduct.  Such
    concessions confirm that defendants had an obligation to preserve the video, yet it was not
28   preserved."  (ECF No. 38 at 4.)

1              <u>Surveillance Video After February 10, 2021</u>

2          As for the video that has been preserved, ostensibly from February 10, 2021, through May

3   30, 2021, the court disagrees with defendants that such video is not relevant, as discussed above.

4   The court appreciates the typical security concerns involved with providing such video to an

5   inmate.  However, as argued by plaintiff, such video is highly relevant to his claims herein.

6   Therefore, defendants shall submit the video to the undersigned for in camera review.  (RPD No.

7   3.)

8                  <u>Inmate Grievances</u>

9          Plaintiff's request for inmate grievances in RPD No. 3 is unclear.  He seeks grievances "in

10  connection with the surveillance video footage."  Such request is not narrowly tailored to the

11  issues herein and fails to adequately identify the nature of the grievances sought.

12         However, in RPD No. 10, plaintiff seeks "all documents" that evidence, mention, or refer

13  to, non-compliance with masking protocols during the period between October 2020 and May 30,

14  2021, on Facility B.  Thus, assuming this request includes all inmate grievances complaining of

15  officers and porters serving meals without properly wearing masks, as alleged in the complaint,

16  the undersigned is persuaded that plaintiff's request for such grievances or inmate appeals by

17  other inmates, even if relevant, is unduly burdensome to defendants.  Litigation Coordinator

18  Quam declares that unless a 602 grievance is categorized as a staff complaint, the inmate receives

19  his 602 back with responses to his complaint allegations, but such 602 grievances are "only

20  searchable by the name of the complaining inmate," not by the involved staff member or by the

21  issue raised.  (ECF No. 41 at 56-57.)  Thus, the 602 grievance of each and every inmate housed in

22  building 4 at HDSP from October 2020 to May 27, 2021, would need to be reviewed to determine

23  whether the inmate had complained of a failure to comply with face masking protocol during

24  meal service.  Such effort would be too time-consuming and expensive.  Plus, the time frame is

25  overbroad inasmuch as defendants acknowledge that plaintiff's grievance put them on notice of

26  the failure to adhere to proper face masking protocol.  In addition, production of the requested

27  documents would also improperly implicate the privacy rights of other inmates.  <u>See, e.g.</u>, <u>Seattle</u>

28  <u>Times Co. v. Rhinehart</u>, 467 U.S. 20, 35 n.21 (1984) (referring to the authority of federal courts

1  to issue protective orders for good cause under Rule 26(c), privacy interests are a valid reason for

2  restricting discovery).[5]  Such grievances may include information concerning the inmate's

3  unrelated medical conditions or other personal matters.  For the foregoing reasons, plaintiff's

4  motion to compel discovery of inmate grievances from October 2020 to May 30, 2021, is denied.

5       However, defendant Pannu allegedly served plaintiff meals without properly wearing a

6  mask.  Therefore, defendants shall produce for in camera review any staff complaint filed against

7  defendant Pannu claiming Pannu was not properly wearing his face mask while Pannu was

8  serving meals in Building 4 at HDSP, from October 17, 2020, through May 27, 2021.  If no such

9  staff complaint was filed, defendants shall so state.

10      Requests No. 4 and No. 8 appear to be related and are addressed together:

11
12        RPD No. 4:  All documents that evidence, mention, or refer to AVSS
          evidence requests or otherwise requests to review audio and/or video
          recordings in connection with HDSP appeal log numbers 50547,
13        55703, 65272, 77010, 82385, 94408, 100835, 103062, and 108658,
          including but not limited to records, reports, statements and other
14        investigative materials and documents relating to subsequent inmate
          and staff discipline, if any, relative to these appeal log numbers."

15        Response:   Defendants have made a reasonable inquiry and
          conducted a diligent search but are unable to comply with the request
16        as responsive documents do not exist.

17  (ECF No. 41 at 43.)

18        RPD No. 8:   All documents that evidence, mention, or refer to,
          including but not limited to, any request or directive to place a
19        "litigation hold" or to preserve AVSS footage in connection with
          HDSP 602-appeal log numbers 50547, 55703, 65272, 77010, 82385,
20        94408, 100835, 103062, and 108658, including but not limited to any
          emails, records, reports, statements and other investigative materials
21        and documents relating to the personnel who reviewed these appeals
          at HDSP.
22
23        Response:  Defendants have made a reasonable inquiry and
          conducted a diligent search but are unable to comply with the request
24        as responsive documents do not exist.

25  _____

26  [5]  At this time it is not necessary to determine whether the requested documents are protected by
     the official information privilege because plaintiff request is unduly burdensome. The court takes
27  no position at this time as to whether the requested documents are protected by the official
     information privilege.

28

1 (ECF No. 41 at 45.)

2        In reply re RPD No. 8, plaintiff claims there is a genuine dispute over whether ISU

3 properly stored the documents sought as mandated by policy at the time.  However, as discussed

4 above, Lt. DeForest confirmed that no request to preserve evidence was submitted.  This

5 declaration supports defendants' response that no responsive documents exist.  No further

6 production is required as to a response from the ISU.

7        With his complaint, plaintiff provided a copy of appeal log no. 94408 in which plaintiff

8 claims he will be using audio video surveillance footage as evidence.  (ECF No. 1 at 86-89.)  In

9 defendant Peery's April 9, 2021 response, under "Documents Considered," Peery included

10 "Audio Video Surveillance System."  (ECF No. 1 at 89.)  Despite the reference to the AVSS,

11 nowhere in Peery's response does Peery claim to have reviewed a specific video.  However, after

12 setting forth the disapproved decision, Peery wrote:  "After a thorough review of all documents

13 and evidence presented at the Office of Grievances Level, it is the order of the Office of

14 Grievance to disapprove the claim."  (ECF No. 1 at 89.)

15        Plaintiff also provided a copy of appeal log no. 55703.  (ECF No. 1 at 44-46.)  In

16 defendant Pickett's December 16, 2020 response, under "Documents Considered," defendant

17 listed "California Department of Corrections and Rehabilitation Form 602 Audio Video

18 Surveillance System."  (ECF No. 1 at 46.)  While defendant Pickett does not expressly state he

19 viewed the video, he also wrote "After a thorough review of all documents and evidence

20 presented at the Office of Grievances Level, it is the order of the Office of Grievance to

21 disapprove the claim."  (ECF No. 1 at 46.)

22        The undersigned finds that defendants' responses to RPD Nos. 4 and 8 are insufficient as

23 to appeals log nos. 94408 and 55703.  Defendants shall supplement their responses to set forth

24 what efforts they took to locate the responsive documents.  If the "California Department of

25 Corrections and Rehabilitation Form 602 Audio Video Surveillance System" referred to in appeal

26 log no. 55703 cannot be located, defendants shall so state.  Similarly, if no documents requesting

27 a litigation hold or a request to preserve surveillance video were discovered, defendants shall so

28 state.

1
2

> RPD No. 5:  All documents that evidence, mention, or refer to, "bed moves" facilitated on Facility B, building 4, during period between November 11, 2020 and November 15, 2020 at HDSP.

3
4
5

> Response:  Objection. The request is not relevant to the claims and defenses in this case, is unduly burdensome and is not proportional to the needs of the case. The request is invasive of the privacy rights of non-party inmates. The request further violates the official information privilege. The request seeks confidential information. California Code of Regulations, tit. 15, § 3321.

6
7
8

> Without waiving these objections, Defendants state:  non-confidential responsive documents in their possession, custody or control will be produced.  (Attachment Three.)

9    (ECF No. 41 at 43-44.)

10       The undersigned is persuaded that RPD No. 5 is not relevant to plaintiff's claims.

11   Plaintiff's complaint alleges that officers and porters failed to properly wear face masks while

12   serving meals at HDSP.  While plaintiff argues that deliberate indifference comes in many forms,

13   the instant allegations relate to mask wearing during meal service, not infections related to bed

14   moves.   Plaintiff claims his "theory has always been that defendants' deliberate indifference is

15   serial," and argues that he is entitled to counter defendants' denial of deliberate indifference with

16   types of circumstantial evidence that would demonstrate fraud, deception, perjury and an attempt

17   to conceal the truth.  (ECF No. 55 at 10.)  But this case is focused on defendants' alleged failure

18   to protect plaintiff from COVID-19 by improperly wearing face masks and failing to ensure

19   porters and officers properly wore face masks while serving meals.  No further production is

20   required.

21
22

> RPD No. 6:  All documents that evidence, mention, or refer to, the "housing roster" for Facility B, building 4, during the period between November 1, 2020 and November 30, 2020 at HDSP.

23
24
25
26

> Response:  Objection. The request is not relevant to the claims and defenses in this case, is unduly burdensome and is not proportional to the needs of the case. The request is invasive of the privacy rights of non-party inmates. The request further violates the official information privilege. The request seeks confidential information. California Code of Regulations, tit. 15, § 3321.

27   (ECF No. 41 at 44.)

28       Plaintiff claims he needs this information in order to identify inmate witnesses to the

1    porters and officers not properly wearing face coverings while serving meals.

2         RPD No. 6 seeks the inmate housing rosters for a limited time frame of November 1

3    through 30, 2020.  Defendants' objection that such request is "unduly burdensome and not

4    proportional to the needs of the case" is not quantified or supported.  Defendants also objected to

5    this request on grounds of confidentiality and third party privacy.  Quam's declaration states that

6    housing rosters are considered confidential and not provided to inmates "because they contain

7    identifying information concerning the inmates housed at the institution," which could result in

8    improper disclosure of confidential information concerning the inmates listed in these

9    documents."  (ECF No. 41 at 57-58.)  But defendants cite only generalized concerns regarding the

10   release of confidential inmate information to other inmates.

11        Such declaration is insufficient to support defendants' claim of privilege.  As noted above,

12   this court is not bound by state law concerning confidentiality and privacy, and does not find such

13   justifications persuasive grounds to withhold discovery of these housing rosters.  Contrary to

14   defendants' argument that only those inmates who served meals to plaintiff are relevant, as

15   plaintiff points out, a roster of inmates housed on plaintiff's unit in November of 2020 may be

16   relevant and necessary for the identification of potential inmate witnesses.  Plaintiff likely has no

17   other means available to obtain such information.  While plaintiff acknowledges that he has

18   produced 26 declarations from eyewitness inmates attesting to the service of meals by individuals

19   without face masks (ECF No. 50 at 2), his possession of such declarations does not change the

20   relevance of the building 4 housing roster for November 2020.

21        Therefore, the undersigned finds the housing roster information is necessary for plaintiff

22   to identify witnesses and must be disclosed to him.  See Sanchez v. City of Santa Ana, 936 F.2d

23   1027, 1033-34 (9th Cir. 1990).

24        That said, to the extent the rosters contain confidential information beyond each inmate's

25   first initial, last name and CDCR number, such information may be redacted.  For example, if any

26   medical information is included on such rosters, such information shall be redacted to avoid

27   violating HIPAA.

28        RPD No. 7:  All documents that evidence, mention, or refer to,

14

1        including but not limited to inmate time-keeping logs relative to
porters assigned on second and third watch on Facility B, building 4,
2        during the period between October 2020 and May 30, 2021, at
HDSP.

3

        Response:  Objection. The request is overbroad as to time, not
4        relevant to the claims and defenses in this case, is unduly
burdensome and is not proportional to the needs of the case. The
5        request is invasive of the privacy rights of non-party inmates. The
request seeks confidential information.  California Code of
6        Regulations, tit. 15, § 3321. Without waiving these objections,
Defendants state: non-confidential responsive documents in their
7        possession, custody or control will be produced.  (Attachment Four.)

8  (ECF No. 41 at 44-45; ECF No. 49 at 63-79 (Attachment Four).)

9        It appears defendants redacted the names of the inmate porters from the seventeen logs

10  provided.  The court is persuaded that the inmate porters' identities are relevant to plaintiff's

11  effort to determine whether any inmate porter was removed from his position as porter based on

12  his alleged continued failure to comport with face-masking protocols.  The fact that plaintiff cited

13  some of the porters' names in his pleading does not confirm that he identified all of the porters.

14  Defendants shall produce to plaintiff the logs bearing the inmate porters' names for the second

15  and third watch for the time frame October 17, 2020, through May 27, 2021.

16        RPD No. 9:  All documents that evidence, mention, or refer to,
Covid-19 infections to both staff and inmates on Facility B during
17        the month of November 2020, including but not limited to medical
records, reports, evaluations, statements and other materials and
18        documents relating to the massive Covid-19 outbreak on Facility B
in November 2020 at HDSP.

19

        Response:  Objection. The request is not relevant to the claims and
20        defenses in this case, is unduly burdensome and is not proportional
to the needs of the case. The request is invasive of the privacy rights
21        of non-party correctional staff members and inmates. The request
further violates the official information privilege and the Health
22        Insurance Portability and Accountability Act. The request seeks
personal and private information of staff members or materials that
23        constitutes personnel information, which is confidential. California
Information Practices Act, Civil Code § 1798, et seq.; Cal. Gov't
24        Code 3300-3313; California Code of Regulations, tit. 15, § 3321,
3450; and 3370.
25

26  (ECF No. 41 at 45.)

27        Defendants' objection that RPD No. 9 is overbroad is sustained.  It is overbroad in terms

28  of the documents sought; for example, medical records may refer to COVID-19 in connection

with other, unrelated medical issues.  And it is overbroad because plaintiff seeks documents as to all correctional staff and inmates who worked in Facility B whether or not they served meals to plaintiff.  As discussed above, plaintiff's claims are limited to his claim that he was exposed to COVID-19 by porters and officers who served meals without properly wearing face masks.  As noted by defendants, plaintiff identified by name the porters and officers who allegedly served plaintiff meals without properly wearing face masks, yet plaintiff failed to narrowly tailor his request.  Moreover, it is now common knowledge that an individual who does not personally have COVID-19 may still transmit COVID-19 to others.  No further production is required.

> RPD No. 10:  All documents that evidence, mention, or refer to, non-compliance with masking protocols and social distancing requirements during the period between October 2020 and May 30, 2021 on Facility B, including but not limited to records, reports, statements and other investigative materials and documents relating to the non-compliance tracking log maintained by HDSP Employee Relations Officer and subsequent inmate and staff discipline, if any.
>
> Response:   Objection. The request is overbroad as to time, not relevant to the claims and defenses in this case, is unduly burdensome and is not proportional to the needs of the case. The request is invasive of the privacy rights of non-party correctional staff members, and inmates. The request further violates the official information privilege. The request seeks personal and private information of staff members or materials that constitutes personnel information, which is confidential. California Information Practices Act, Civil Code § 1798, et seq.; Cal. Gov't Code 3300-3313; California Code of Regulations, tit. 15, § 3321, 3450; and 3370.

(ECF No. 41 at 45-46.)

As noted above, defendants' objection as to the time frame and relevance are overruled.

While defendants read RPD No. 10 as including a request for inmate grievances, the undersigned finds that a request for such grievances was set forth in RPD No. 3, and therefore is addressed in that section.

Plaintiff's RPD No. 10 is overbroad in terms of types of documents sought.  That said, plaintiff identifies a specific document that is highly relevant to plaintiff's claims:  non-compliance tracking logs maintained by HDSP Employee Relations Officer.  Defendants provided plaintiff with a redacted Non-Compliance Log for Facility B at HDSP; the first entry is dated November 9, 2020.  (ECF No. 41 at 68-69.)

1    In opposition to plaintiff's motion, defendants narrowly parse their liability:  "[t]he most

2    important factor in determining their liability is the sufficiency of their response, rather than the

3    details of the actual discipline imposed on specific officers, especially if those officers had no

4    connection with Plaintiff's disease."  (ECF No. 49 at 19.)  But the details of the discipline

5    imposed would demonstrate whether or not the response was reasonable.  For example, a simple

6    verbal warning in the face of a highly contagious virus might be insufficient if a continued

7    violation goes unpunished.  A written warning with no immediate follow-up for failure to comply

8    could support an argument that the response was unreasonable.  The timing of any discipline is

9    also relevant to the issue.

10    Unfortunately, the redacted non-compliance log does not identify whether or not the

11    noncompliant officer was serving or supervising meals provided to plaintiff's housing unit.  It is

12    unclear whether defendants or other CDCR employees are separately tracking progressive

13    discipline for correctional officers or porters who fail to comply with masking protocols, or

14    whether such information would need to be gathered from each individual officer's personnel

15    files.  However, the reporting that is being required in the Plata class action, as detailed below,

16    suggests that some of this tracking is taking place.

17    As noted by plaintiff, prison officials have been required to provide to plaintiffs' class

18    counsel and the federal receiver in a pending class action biweekly reports regarding staff

19    noncompliance with face covering and physical distancing requirements.  Plata v. Newsom, Case

20    No. 4:01-cv-1351 JST (N.D. Cal. Nov. 20, 2020) (ECF No. 3492).  The reports were to include,

21    at a minimum:  (a) the classification of each staff person who failed to comply with CDCR's

22    October 27, 2020 Memorandum regarding face covering and physical distancing requirements,

23    including whether it is a repeat offense; (b) the institution and unit where the violation occurred;

24    (c) a summary of the specific violation, including date; and (d) a summary of the action taken, if

25    any, by CDCR in response to the violations as of the date of the production of the report.  Id. at 3.

26    The OIG report referenced in the November 20, 2020 order surveyed seven prisons that did not

27    ////

28    ////

17

include HDSP.[6]  In the December 9, 2020 joint case management conference statement,

plaintiffs' class counsel noted that following receipt of the first set of biweekly reports re

noncompliance, there were 521 incidents of noncompliance among custody staff in the 35

prisons.  Id. (Dec. 9, 2020 Statement) (ECF No. 3501 at 9.)  While the majority of the incidents

reported by the CDCR occurred between October 27, 2020, and December 2, 2020, "several

prisons included reports from earlier on in the pandemic."  Id. at 18 n.13.  The statement also

noted that "the Office of the Inspector General plan[ned] to conduct random audits of CDCR's

compliance with the mandatory mask requirement at all 35 state prisons between December 7,

2020, and March 7, 2021."  Id. at 19.  Defense counsel noted that the vast majority of the

noncompliance was by first time offenders, and "[f]or those instances of noncompliance that were

a repeat offense, nearly all offending CDCR staff members received progressive discipline."  Id.

at 20.  In a December 4, 2020 directive, staff were informed of updated and clarified expectations

for staff mask usage, and "required to review and acknowledge the directive via CDCR's training

portal.  Supervisors are notified of any staff who have failed to review and acknowledge the

directive."  Id.  The directive set forth the progressive discipline:  verbal counseling, employee

counseling record (CDC Form 1123), letter of instruction, and adverse action or rejection during

probation, dependent on the employee's tenure.  Id. (Attachment A) (ECF No. 3501-1 at 4.)

On December 20, 2020, in another joint case management conference statement,

plaintiffs' class counsel noted receipt of the second set of biweekly reports of staff

noncompliance with face covering, and set forth several discrepancies in the reported

information, but reported that noncompliance continues."  Id. (Dec. 20, 2020 Joint Statement)

(ECF No. 3520 at 15.)  Defense counsel provided plaintiffs' class counsel "with mask compliance

logs on December 18, 2020."  Id. at 17.

In the January 13, 2021 joint statement, plaintiffs' class counsel noted receipt of the third

set of biweekly reports of staff noncompliance with face covering requirements; while four

---

[6] <https://www.oig.ca.gov/wp-content/uploads/2020/10/OIG-COVID-19-Review-Series-Part-2-%E2%80%93-Face-Coverings-and-PPE.pdf>, accessed May 23, 2022, at p. 31.

1  prisons reported no incidents,[7] about 100 incidents among custody staff between December 16

2  and 29 were reported for the remaining CDCR prisons, and the "majority of corrective action was

3  verbal counseling." Id. (Jan. 13, 2021 Joint Statement) (ECF No. 3530 at 21.)  In the February

4  12, 2021 joint statement, the parties noted receipt of the OIG's report on face covering

5  monitoring. Id. (Feb. 12, 2021 Joint Statement) (ECF No. 3548.)  The appended OIG report

6  noted that at HDSP, staff face covering compliance was "partial," and incarcerated population

7  face covering compliance was "significant non-compliance." Id. (Ex. A) (ECF No. 3548-1 at 2.)

8  Partial compliance was defined as "several (typically, 60 to 10) non-compliant individuals

9  observed without face coverings or improperly wearing face coverings," and significant non-

10  compliance was defined as "Many (typically, more than 10) non-compliant individuals observed

11  without face coverings or improperly wearing face coverings." Id. (ECF No. 3548-1 at 3.)

12  Review of disciplinary actions for noncompliance at HDSP from December 30, 2020, through

13  January 12, 2021, reflected two verbal counseling and two letters of instruction for staff and one

14  rules violation for incarcerated population. Id. (ECF No. 3548-1 at 4.)

15        In the March 24, 2021 joint statement, the parties provided the OIG's March 24, 2021

16  report that noted HDSP issued 7 verbal counseling and 14 letters of instruction for staff

17  noncompliance, no discipline for an inmate. Id. (ECF No. 3566-1 at 9.)  On April 27, 2021, the

18  parties provided additional OIG's reports from March 2021:  At HDSP, staff was reported as "in

19  substantial compliance," and the incarcerated population was reported as "in partial compliance."

20  Id. (ECF No. 3579-2 at 3.)  Substantial compliance was defined as "[t]ypically, three or fewer

21  non-compliant individuals observed without face coverings or improperly wearing face

22  coverings." Id.  One significant observation noted:

23            High Desert State Prison (March 9, 2021):   As the OIG has
              previously reported at other facilities, we observed four incarcerated
24            culinary workers failing to wear their face coverings correctly. Three
              incarcerated persons wore their masks below their noses, and one
25            wore a handkerchief (which is not an approved face covering). Prison
              staff who were present in the culinary did not direct the incarcerated
26            persons to don their face coverings properly.

27  _____

[7] Central California Women's Facility, California State Prison, Centinela, California State
28  Prison, Solano, and Valley State Prison. Id. at 21 n.21.

1   Id. (ECF No. 3579-2 at 4.)  Disciplinary actions taken at HDSP from February 24, 2021, through

2   March 31, 2021 were:  one letter of instruction to staff and four rules violations for inmates.  Id.

3   at 5.  The OIG concluded that "most prisons within the department appear to have been in

4   substantial or partial compliance with facial covering and physical distancing requirements during

5   the November 27, 2020, through March 26, 2021 compliance period."  Id. at 6.  In April of 2021,

6   the OIG revised its monitoring schedule and planned to visit each of the 35 prisons no less than

7   once every four months.  Id. (ECF No. 3579-3 at 2.)  The May 25, 2021 joint statement provided

8   a copy of the OIG's monitoring report for April 2021.  Id. (ECF No. 3592 at 19-20.)  The OIG did

9   not visit HDSP as part of the 11 prisons visited but noted that the following disciplinary actions

10  for noncompliance at HDSP from April 1 through May 4, 2021:  three letters of instruction to

11  staff, and one corrective counseling for an inmate.  Id. (ECF No. 3592-1 at 12.)  The June 25,

12  2021 joint statement did not address the issue of face covering compliance.  Id. (ECF No. 3605.)

13          Defendants shall produce, for *in camera* review, copies of the biweekly reports provided

14  to plaintiffs' class counsel and the federal receiver in Plata for HDSP for the time frame October

15  17, 2020, to May 27, 2021.  Following review of such reports, the undersigned will determine

16  whether further production is required.

17          RPD No. 11:  All documents that evidence, mention, or refer to,
            inmate deaths as a result of Covid-19 at HDSP.
18

19          Response:  Objection. The request is overbroad as to time and scope,
            not relevant to the claims and defenses in this case, is unduly
20          burdensome and is not proportional to the needs of the case. The
            request is invasive of the privacy rights of non-party inmates. The
21          request further violates the official information privilege. The request
            seeks confidential information. California Code of Regulations, tit.
22          15, § 3321.

23  (ECF No. 41 at 46.)

24          Plaintiff did not limit this request by time or by location within HDSP; thus, his request is

25  overbroad.  In addition, that two inmates died from COVID-19 while housed at HDSP is a matter

26  of public record, published on the CDCR website.[8]  Plaintiff's arguments notwithstanding (ECF

27  _____

28  [8] <https://www.cdcr.ca.gov/covid19/population-status-tracking/>, accessed May 20, 2022.

No. 55 at 12-13), the undersigned does not find such inmate deaths relevant to plaintiff's claims

asserted herein.  No further production is required.

> RPD No. 12:  All documents written or created since October 2020,
> that contain, mention, construe, or refer to, any inspection, inquiry or
> complaint about safety conditions or the risk of Covid-19 infection
> at HDSP, including but not limited to, whether formal or informal,
> official or unofficial, including inmate, staff and civilian grievances,
> complaints and appeals, including responses to such documents
> prepared by HDSP staff or its agents, including inmate lawsuits
> against HDSP relative to Covid-19.

> Response:   Objection. The request is overbroad as to time, not
> relevant to the claims and defenses in this case, is unduly
> burdensome and is not proportional to the needs of the case. The
> request is invasive of the privacy rights of Defendants, other
> correctional staff members, and inmates who submitted complaints.
> The request further violates the official information privilege. The
> request seeks personal and private information of staff members or
> materials that constitutes personnel information, which is
> confidential. California Information Practices Act, Civil Code §
> 1798, et seq.; Cal. Gov't Code 3300-3313; California Code of
> Regulations, tit. 15, § 3321, 3450; and 3370.  Without waiving these
> objections, Defendants state: non-confidential responsive documents
> in their possession, custody or control will be produced. (Attachment
> Five.)

(ECF No. 41 at 46-47; ECF No. 49 at 82-101 (Attachment Five).)

Plaintiff's Request No. 10 is overbroad, both as to time because it is not limited in time,

and as to subject matter because the request is not narrowly tailored to the issues of this case.  No

further production is required.

> RPD No. 13:  All other documents, items of evidence, or sworn or
> unsworn statements or affidavits that relate to the allegations made
> in Plaintiff's complaint, including but not limited to, records, reports,
> statements and other investigative materials and documents relating
> to Plaintiff's November 20, 2020 and January 17, 2021 letters to
> Defendant Kibler, including any responses to such documents
> prepared by Kibler and/or inmate and staff discipline, if any.

> Response:   Objection. The request is overbroad as to time, not
> relevant to the claims and defenses in this case, is unduly
> burdensome and is not proportional to the needs of the case. The
> request is invasive of the privacy rights of Defendants, other
> correctional staff members, and inmates who submitted complaints.
> The request further violates the official information privilege. The
> request seeks personal and private information of staff members or
> materials that constitutes personnel information, which is
> confidential. California Information Practices Act, Civil Code §
> 1798, et seq.; Cal. Gov't Code 3300-3313; California Code of
> Regulations, tit. 15, § 3321, 3450; and 3370.

21

1  (ECF No. 41 at 47.)

2  　　　　As discussed above, defendants' objection that the request is overbroad as to time is

3  overruled.  In addition, plaintiff is entitled to discover whether defendants had notice that

4  masking protocols were not being complied with during meal service in Building 4, Facility B,

5  from October 17, 2020, to January 21, 2021, the date Kibler identified as the date he first became

6  aware of plaintiff's allegations concerning non-compliance with facial covering policies.  (ECF

7  No. 57-2 at 29 (Decl. in Support Motion Summ. Jdgmt.)  On the redacted noncompliance log, the

8  first date of noncompliance at HDSP is November 9, 2020 (ECF No. 41 at 68), but it is unclear

9  when Kibler first became aware of noncompliance during meal service in building 4 at HDSP.

10  Plaintiff argues that in response to interrogatories, defendant Kibler states that he learned of

11  noncompliance through "visual observation, receiving reports of noncompliance or observing the

12  same on the surveillance system, and reviewing correspondence and the grievance process."

13  (ECF No. 42 at 6.)  Kibler's declaration filed with defendants' motion for summary judgment,

14  confirms that as warden, he "became aware of allegations of non-compliance with facial covering

15  requirements by reviewing reports concerning non-compliance observed on the Audio/Video

16  Surveillance System, receiving reports from supervisors and managers, and reviewing

17  correspondence."  (ECF No. 57-2 at 29.)  Such documents appear highly relevant to plaintiff's

18  claims to determine when defendant Kibler became aware of the noncompliance in building 4.

19  Because plaintiff is unable to obtain grievances filed by other inmates complaining of

20  noncompliance with face-masking protocol, defendants are directed to produce for *in camera*

21  review those unredacted "reports concerning non-compliance observed on the Audio/Video

22  Surveillance System, reports from supervisors and managers, and correspondence," solely for

23  Building 4, Facility B, HDSP, for the time frame October 17, 2020 to November 20, 2020, and

24  solely as to those reports or complaints that face masks were not being properly worn during meal

25  service.

26  　　　　　　　　RPD No. 14:  All documents that contain, mention, construe, or refer
　　　　　　　to any insurance agreement or arrangement to which an insurance
27  　　　　　　　company or other person or entity will guaranty, act as a surety for,
　　　　　　　or otherwise bear any responsibility for litigating this action,
28  　　　　　　　including, but not limited to paying the Defendants' attorney's fees,

costs, or out-of-pocket expenses, or paying for any monetary or injunctive relief ordered as part of a court or consent judgment.

Response:   The responding parties have conducted a reasonable inquiry and a diligent search but cannot respond to this request as responsive documents do not exist.

(ECF No. 41 at 48.)

Defendants' opposition demonstrates that the documents plaintiff requests cannot be located after a reasonable inquiry and diligent search.  Rogers v. Giurbino, 288 F.R.D. 469, 485 (S.D. Cal. 2012) (citations omitted) ("A party must make a reasonable inquiry to determine whether responsive documents exist, and if they do not, the 'party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence.'")  The undersigned cannot compel defendant to produce documents that cannot be located after a reasonable inquiry and diligent search.  See Muhammad v. Jenkins, 2021 WL 5911684, at *5 (C.D. Cal. Sept. 8. 2021) (citations omitted) ("At the same time, the court cannot order a party to produce documents that do not exist.  A mere suspicion that additional documents must exist is insufficient basis to grant a motion to compel.").  Accordingly, plaintiff's motion to compel further response to RPD No. 14 is denied.

### G.  Interrogatories

Defendant Pickett's Response to Interrogatory Nos. 6 & 9

No. 6:  Describe what you did, if anything, to ensure staff and inmates followed face covering and physical distancing requirements in effect during the time period between March 2020 and May 30, 2021, during your employment as acting Warden and Chief Deputy Warden at HDSP.

Response:   Objection. The interrogatory is overbroad as to time, compound, and not relevant to the claims and defenses asserted in this action. Without waiving these objections, Defendant states: as to correctional staff, training was completed, numerous staff meetings were held to discuss the requirements and the need to comply with them, unannounced building tours were completed by the Office of the Inspector General, health care executives, and CDCR Associate Directors regarding compliance, non-compliance was tracked, and staff were held accountable for their actions through progressive discipline. Concerning inmate workers, the policies concerning facial coverings were distributed to inmates, announcements concerning the policies were made on the facilities, Personal Protective Equipment (PPE) was made available to inmates, and

23

correctional staff enforced the policies through verbal counseling, removal of inmates from their positions, and issuing Rules Violation Reports (RVR's) for failure to comply.

(ECF No. 41 at 90.)

No. 9: "Describe any actions you took in response to the allegations of staff and inmate noncompliance with face covering and physical distancing requirements at HDSP made by Plaintiff relating to events during the time period between October 2020 and May 30, 2021, at HDSP.

Response:   Objection. The interrogatory is overbroad as to time, compound, and not relevant to the claims and defenses asserted in this action. The interrogatory is argumentative and assumes facts. Without waiving these objections, Defendant states: please see the response to Interrogatory 6, above, which is incorporated by reference. Additionally, if staff were identified confirmed as noncompliant, they were held accountable through progressive discipline.

(ECF No. 41 at 91.)

Defendants' objection that the interrogatories are overbroad as to time and not relevant are overruled.  However, defendants' objections that the interrogatory is compound and overbroad in scope because they were not limited to Facility B where plaintiff was housed, are sustained. Moreover, although plaintiff contends Pickett did not respond as to actions Pickett personally took, defendant Pickett, Chief Deputy Warden, holds a supervisory position, and set forth efforts he took as a supervisor to ensure compliance with COVID-19 protocols.  If defendant Pickett has an additional response applicable to the time frame November 11, 2020, to May 27, 2021, solely during meal service in building 4, Facility B at HDSP, defendant Pickett shall supplement his responses to interrogatories Nos. 6 & 9.

Defendant Kibler's Responses to Interrogatory Nos. 6 & 7

No. 6:  Describe what you did, if anything, to ensure that HDSP staff followed the face covering and physical distancing requirement policies in effect during the time period between October 2020 and May 30, 2021, during your employment as acting Warden at HDSP.

Response:   Objection. The interrogatory is overbroad as to time, compound, and not relevant to the claims and defenses asserted in this action. Without waiving these objections, Defendant states: training was completed, Personal Protective Equipment (PPE) was made available, building tours were completed, non-compliance was tracked, and staff were held accountable for their actions through

24

1    progressive discipline.

2   (ECF No. 41 at 100.)

3           No. 7:  Describe what you did, if anything, to ensure that HDSP
            inmates followed the face covering and physical distancing
4           requirement policies in effect during the time period between
            October 2020 and May 30, 2021, during your employment as acting
5           Warden at HDSP.

6           Response:   Objection. The interrogatory is overbroad as to time,
            compound, and not relevant to the claims and defenses asserted in
7           this action. Without waiving these objections, Defendant states:  the
            policies were distributed to inmates, announcements concerning the
8           policies were made on the facilities, Personal Protective Equipment
            (PPE) was made available to inmates, and correctional staff enforced
9           the policies through verbal counseling and issuing Rules Violation
            Reports (RVR's) for failure to comply.

10

11   (ECF No. 41 at 100-01.)

12          Defendants' objection that the interrogatories are overbroad as to time and not relevant are

13   overruled.  Defendants' objections that the interrogatory is compound and overbroad in scope

14   because they were not limited to Facility B where plaintiff was housed, are sustained.  Moreover,

15   although plaintiff contends Kibler did not respond as to actions Kibler personally took, defendant

16   Kibler, Warden of HDSP, holds a supervisory position, and set forth efforts he took as a

17   supervisor to ensure compliance with COVID-19 protocols.  If defendant Kibler has an additional

18   response applicable to the time frame November 11, 2020, to May 27, 2021, solely related to face

19   mask wearing during meal service in building 4, Facility B at HDSP, defendant Kibler shall

20   supplement his responses to interrogatories Nos. 6 & 9.

21          Defendant Pannu's Responses to Interrogatory Nos. 5, 6 & 7

22          No. 5:  Please describe in as much detail as possible the complete
            circumstances surrounding you and porters under your supervision
23          being captured on HDSP surveillance footage depicting the interior
            of Facility B, building 4, during morning and dinner meals, serving
24          meals without wearing masks covering your mouths and/or noses
            during the time between February 2021 and May 30, 2021.

25          Response:  Objection. The interrogatory is not relevant to the claims
            and defenses asserted, argumentative, assumes facts, and is
26          compound.

27   (ECF No. 41 at 109.)

28

                                        25

No. 6:  What did you do, if anything, after learning that you and porters were captured on HDSP surveillance footage on Facility B building 4, serving breakfast and dinner meals without wearing a mask covering your mouths and noses during the period of time between February 2021 and May 30, 2021.

Response:  Objection. The interrogatory is not relevant to the claims and defenses asserted, argumentative, and assumes facts.

(ECF No. 41 at 109.)

Defendants' objections that interrogatory Nos. 5 and 6 assume facts is sustained because the questions presume that defendant Pannu learned that Pannu and porters were captured on video surveillance.  No further responses are required.

No. 7:  What did you do, if anything, to ensure fellow staff and inmates followed face covering and physical distancing requirements in effect during the period of time between February 2021 and May 30, 2021, during your employment as a correctional officer of HDSP.

Response:  Objection. The interrogatory is not relevant to the claims and defenses asserted.

(ECF No. 41 at 110.)

Defendants' objection that No. 7 is not relevant is overruled.  Defendant Pannu shall respond to interrogatory No. 7 as to his employment in building 4 at HDSP from February 2021 to May 27, 2021.

Defendant Peery

In his supplemental motion, plaintiff contends that defendant Peery's answers to interrogatories were "incomplete and evasive." (ECF No. 42 at 7.)  However, plaintiff did not identify, with specificity, the interrogatory responses plaintiff challenges.  (ECF No. 42, *passim*.)  The court could deny plaintiff's motion based on such failure.  However, because defendants addressed particular interrogatories, the court will address those responses.

Defendant Peery's Responses to Interrogatory Nos. 4, 5 & 9

No. 4:  Please describe in as much detail as possible, if you, as the personnel who reviewed CDCR 602 appeal/grievance HDSP log numbers 77010, 82385, 94408, 100835, 103062 and 108658, at the time acknowledged that the grievances placed you on notice that the events were captured by video surveillance, and that the policy in place in 2020-2021 required the video to be preserved for a longer period since staff misconduct was alleged.

26

Response:  Objection. The interrogatory is overbroad as to time, compound, and not relevant to the claims and defenses asserted in this action. The interrogatory is argumentative and assumes facts. Without waiving these objections, Defendant states: No, as these grievances were determined to be routine grievances, rather than a staff complaint requiring supervisory review.

(ECF No. 42 at 40.)

No. 5:  Describe what you did, if anything, after learning that staff and porters were captured on HDSP surveillance footage depicting the interior of Facility B, building 4, during morning and dinner meals, serving meals without wearing masks covering their mouth and nose during the time period between October 2020 and May 30, 2021.

Response:  Objection. The interrogatory is overbroad as to time, compound, and not relevant to the claims and defenses asserted in this action. The interrogatory is argumentative and assumes facts. Without waiving these objections, Defendant states: as to correctional staff, training was completed, Personal Protective Equipment (PPE) was made available, building tours were completed, non-compliance was tracked, and staff were held accountable for their actions through progressive discipline. Concerning inmate workers, the policies concerning facial coverings were distributed to inmates, announcements concerning the policies were made on the facilities, Personal Protective Equipment (PPE) was made available to inmates, and correctional staff enforced the policies through verbal counseling, removal of inmates from their positions, and issuing Rules Violation Reports (RVR's) for failure to comply.

(ECF No. 42 at 40-41.)

No. 9:  Describe what you did, if anything, to ensure staff and inmates followed face covering and physical distancing requirements in effect during the time period between March 2020 and May 30, 2021, during your employment as acting Chief Deputy Warden and Associate Warden of HDSP.

Response:  Objection. The interrogatory is overbroad as to time, compound, and not relevant to the claims and defenses asserted in this action. Without waiving these objections, Defendant states:  see response to Interrogatory 5, which is incorporated by reference.

(ECF No. 42 at 41.)

Defendants' objection that the interrogatories are overbroad as to time are overruled.

Although the grievances were dated on or after January 7, 2021, after plaintiff was diagnosed

with COVID-19, the risk of reinfection remained until plaintiff was transferred on May 27, 2021.

Plaintiff was entitled to inquire whether defendant Peery's review of such grievances required

1   Peery to preserve the video surveillance for a longer period of time, and defendant responded no;

2   because such grievances were determined to be routine, rather than a staff complaint requiring

3   supervisory review, no retention was required.  No further response to Interrogatory No. 4 is

4   required.

5        As to interrogatory No. 5, despite the objections, defendant Peery provided a response as

6   to what actions were taken.  However, if defendant Peery has an additional response applicable to

7   the time frame January 7, 2021, to May 27, 2021, solely related to face mask wearing during meal

8   service in building 4, Facility B at HDSP, defendant Peery shall supplement his responses to

9   interrogatory Nos. 5 and 9.

10   IV.   Plaintiff's Motion for Sanctions

11        Plaintiff maintains that the court should view defendants' responses as a failure to answer,

12   and impose sanctions on defendants, including issuing a finding that plaintiff has made a prima

13   facie showing as to paragraphs 11-39 of the complaint, and order a judgment awarding monetary

14   sanctions for defendants' alleged abuse of the discovery process.

15        A court may require a party to pay the moving party's expenses incurred in making the

16   motion, unless the opposing party's responses and objections were substantially justified.  Fed. R.

17   Civ. P. 37(a)(5)(A)(ii).

18        The undersigned does not find that defendants failed to respond to discovery requests in a

19   meaningful manner.  While the court overruled defendants' objection that plaintiff's claims ended

20   on November 20, 2020, the date plaintiff was infected with COVID-19, the court does not find

21   defendants' position was unreasonable or taken in bad faith.  And, despite lodging objections,

22   defendants provided responsive documents and responses to interrogatories, with the exception of

23   defendant Pannu.

24        With respect to reasonable expenses, the court may apportion expenses if a motion is

25   granted in part and denied in part.  Fed. R. Civ. P. 37(a)(5)(C).  The undersigned is not inclined to

26   apportion expenses because doing so imposes a burden on court resources without any

27   corresponding benefit either to plaintiff or to defendants given plaintiff's indigency.  Plaintiff

28   may only seek reimbursement of the reasonable expenses he actually incurred and he would be

1   entitled only to a partial apportionment given that his motion was only partially granted.

2   Assuming for the sake of argument that plaintiff actually incurred some minimal expense for

3   copies or mailing, an amount which would be further reduced due to apportionment, that expense

4   would be offset against and greatly outweighed by defendants' corresponding entitlement to more

5   significant reimbursement given that they incurred attorney's fees and plaintiff's motion was

6   denied in part.

7           Contrary to plaintiff's position, defendants were not required to move for a protective

8   order.  Rather, defendants provided a privilege log accompanied by a declaration.  (ECF No. 41 at

9   49-53; 55-58.)

10          To the extent plaintiff also seeks attorney fees, he may not seek attorney's fees or

11  reimbursement for fees based on his estimate of the time he invested in preparing his motion to

12  compel.  See Kay v. Ehrler, 499 U.S. 432, 435 (1991) (even pro se litigants who are attorneys are

13  not entitled to recover attorney's fees); Elwood v. Drescher, 456 F.3d 943, 946-48 (9th Cir.

14  2006); Gonzales v. Kangas, 814 F.2d 1411, 1412 (9th Cir. 1987).

15  V.  Motion to Strike

16          Plaintiff filed a document entitled "Commercial Notice Appointment of Fiduciary

17  Debtor."  Plaintiff claims to have unilaterally appointed defense counsel as a fiduciary under

18  Internal Revenue Code sections 6036 and 6903.  (ECF No. 43 at 2, 4-5.)  Defendants move to

19  strike the notice as immaterial and impertinent to plaintiff's Eighth Amendment allegations pled

20  herein, citing Fed. R. Civ. P. 12(f), and argue that the notice may result in prejudice to

21  defendants.  While sections 6036 and 6903 allow a person acting in a fiduciary capacity to

22  represent a taxpayer before the Internal Revenue Service ("IRS"), the IRS is not a party herein

23  and no issue involves the IRS.  The notice also refers to a fiduciary for a "corporate entity" (ECF

24  No. 43 at 2), but plaintiff pursues this action in his individual capacity as a prisoner, not a

25  corporate entity.

26          Plaintiff objects that his notice was simply a "notice," not part of a pleading, and that the

27  filing of his notice did not attempt to appoint R. Lawrence Bragg but in fact did formally appoint

28  R. Lawrence Bragg as "fiduciary debtor" for plaintiff, and is a negotiable instrument taken in

29

1  commerce under the Uniform Commercial Code, not the IRS.  (ECF No. 51.)

2      In reply, defendants argue that whether or not a Commercial Notice -- Appointment of

3  Fiduciary Debtor is a negotiable instrument taken in commerce under Uniform Commercial Code

4  section 3-101, et seq., such notice is immaterial and impertinent to the issued raised herein.

5  Moreover, defendants dispute that the State of California, Department of Corrections and

6  Rehabilitation and the Office of the Attorney General are corporate entities and parties to this

7  action.

8      Under Rule 12(f), this "court may strike from a pleading an insufficient defense or any

9  redundant, immaterial, impertinent, or scandalous matter.  The court may act:  (1) on its own; or

10  (2) on motion made by a party either before responding to the pleading or, if a response is not

11  allowed, within 21 days after being served with the pleading."  Fed. R. Civ. P. 12(f).  "A movant

12  must show that the allegations are devoid of merit, unworthy of any consideration, and unduly

13  prejudicial."  Facility Wizard Software, Inc. v. Southeastern Technical Services, LLC, 647

14  F.Supp.2d 938, 942 (N.D. Ill. 2009).

15      Plaintiff's filing is a "Notice," and not a pleading, as defined under the Federal Rules.

16  Fed. R. Civ. P. 7(a).  Therefore, defendants' motion to strike the notice under Rule 12(f) is

17  denied.  That said, defendants are correct that plaintiff's putative claims under the Uniform

18  Commercial Code have absolutely nothing to do with the claims raised in the instant action.  As

19  set forth above, plaintiff is pursuing Eighth Amendment claims against the four defendants named

20  herein.  The State of California and the CDCR are not parties to this lawsuit.  Indeed, the

21  Eleventh Amendment serves as a jurisdictional bar to suits brought by private parties against a

22  state or state agency unless the state or the agency consents to such suit.  See Quern v. Jordan,

23  440 U.S. 332 (1979); Alabama v. Pugh, 438 U.S. 781 (1978) (per curiam); Jackson v. Hayakawa,

24  682 F.2d 1344, 1349-50 (9th Cir. 1982).  In the instant case, the State of California has not

25  consented to suit.

26      While this court may not have jurisdiction over claims properly brought under the

27  Uniform Commercial Code, no such claims were brought in this action.  Plaintiff claims he "has

28  in fact formally appointed" defense counsel as "fiduciary debtor" for plaintiff "*in matters before*

*this court*" (ECF No. 51 at 2 (emphasis added)), but plaintiff is mistaken.  R. Lawrence Bragg is counsel for defendants in this action, and plaintiff's purported "Commercial Notice" has no legal effect in this action which is limited to plaintiff's Eighth Amendment claims brought under 42 U.S.C. § 1983.  Whether or not plaintiff's filing is effective in a different case or context is of no moment here; rather, jurisdiction over this action is governed by 42 U.S.C. § 1983, as alleged in plaintiff's own civil rights complaint.

Therefore, plaintiff's "Commercial Notice" is disregarded.  Plaintiff shall refrain from filing any further documents related to the Uniform Commercial Code in this action.  Failure to comply with this order may result in the imposition of sanctions, including a recommendation that this action be dismissed based on a failure to comply with court orders.  Fed. R. Civ. P. 41(b).

VI.  <u>Motion to Modify Scheduling Order</u>

Plaintiff moves to extend the discovery deadline, and now moves to modify the scheduling order.  (ECF Nos. 44, 58.)  Defendants object that discovery should not be reopened in toto because such extension is not required for the purpose of corresponding with putative inmate witnesses, and because plaintiff has already served multiple sets of discovery and was not diligent about serving other sets prior to the court's deadline.  In light of the finding that plaintiff's claims did not expire when he was first diagnosed with COVID-19, and because defendants are being required to provide additional discovery, the undersigned finds good cause to modify the discovery deadline to provide for responses as ordered herein, and for the court to conduct its in camera review.  The undersigned agrees that it is not appropriate to fully reopen discovery.  Rather, plaintiff is granted a period of time to review defendants' additional responses and seek further court intervention if such responses are not satisfactory.

In light of this order, it appears that defendants' motion for summary was prematurely filed and should be vacated without prejudice.  Defendants should refrain from refiling such motion until the discovery disagreements are resolved.

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion to compel (ECF No. 41) is partially granted.

Thirty days from the date of this order, defendants shall:

31

1    (a) electronically submit the surveillance video from February 10, 2021, through

2  May 30, 2021, during meal service in building 4 at HDSP, sought in RPD No. 3, for *in camera*

3  review to kjnorders@caed.uscourts.gov.

4    (b) produce for *in camera* review any staff complaint filed against defendant

5  Pannu claiming Pannu was not properly wearing his face mask while Pannu was serving meals in

6  Building 4 at HDSP, from October 17, 2020, through May 27, 2021 (RPD Nos. 3, 10); if no such

7  staff complaint was filed, defendants shall so state.

8    (c)  supplement their responses to RPD Nos. 4 & 8 to set forth what efforts were

9  taken to locate the responsive documents as to appeals log nos. 94408 and 55703.  If the

10  "California Department of Corrections and Rehabilitation Form 602 Audio Video Surveillance

11  System" referred to in appeal log no. 55703 cannot be located, defendants shall so state.

12    (d) produce to plaintiff the redacted housing rosters for Facility B, building 4, at

13  HDSP for November 1, 2020, and November 30, 2020 (RPD No. 6).

14    (e) produce, for *in camera review*, copies of the biweekly reports provided to

15  plaintiffs' class counsel and the federal receiver in <u>Plata</u> for HDSP for the time frame October 17,

16  2020, to May 27, 2021 (RPD No. 10).

17    (f) produce for *in camera* review those unredacted "reports concerning non-

18  compliance observed on the Audio/Video Surveillance System, reports from supervisors and

19  managers, and correspondence," reviewed by defendant Kibler, solely for Building 4, Facility B,

20  HDSP, for the time frame October 17, 2020, to January 21, 2021, and solely as to those reports or

21  complaints that face masks were not being properly worn during meal service.  (RPD No. 13.)

22  For the documents produced to plaintiff, defendants shall serve plaintiff with supplemental

23  responses and file certifications with the court as ordered herein.  For the documents submitted

24  for *in camera* review, defendants shall submit the documents to kjnorders@caed.uscourts.gov.

25    (g) Defendant Pannu shall respond to interrogatory No. 7 as to his employment in

26  building 4 at HDSP from February 2021 to May 27, 2021.

27    (h) In light of the court overruling defendants' narrow view of the scope of

28  discovery, if additional responses applicable to the time frame November 11, 2020, to May 27,

2021, solely as to meal service in building 4, Facility B at HDSP, are appropriate, defendants shall supplement their responses to interrogatories as identified above.

In all other respects, plaintiff's motion to compel is denied.

2. Plaintiff's motion for sanctions (ECF No. 41) is denied. The undersigned declines to award expenses.

3. Defendants' motion to strike (ECF No. 48) is denied;

4. The Clerk of the Court shall mark plaintiff's "Commercial Notice" (ECF No. 43) as disregarded;

5. Plaintiff's motion to extend discovery (ECF No. 44) is partially granted;

6. Plaintiff's motion to modify the scheduling order (ECF No. 58) is partially granted;

7. Discovery is extended to August 1, 2022, for the sole purpose of resolving the discovery requests at issue herein; the dispositive motions deadline is extended to October 1, 2022; in all other respects the terms of the October 21, 2021 discovery and scheduling order remain the same.

8. Defendants' motion for summary judgment (ECF No. 57) is vacated. The parties shall refrain from renewing or filing motions for summary judgment until after all discovery disputes have been resolved.

Dated:  May 25, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/peyt0719.mtc

33