UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE EDWARD PEYTON,<br><br>                    Plaintiff,<br><br>          v.<br><br>BRIAN KIBLER, et al.,<br><br>                    Defendants. | No.  2:21-cv-0719 DJC KJN P<br><br><br><br>FINDINGS & RECOMMENDATIONS |

Plaintiff is a state prisoner, proceeding pro se and in forma pauperis.  Defendants' fully briefed motion for summary judgment is before the court.  As discussed below, the motion should be granted.

I.  Plaintiff's Verified Complaint

Plaintiff alleged defendants Brian Kibler, J. Pickett, R. Perry, and A. Pannu failed to protect plaintiff in violation of the Eighth Amendment.  Despite plaintiff's verbal complaints to correctional officers and other prison staff, as well as multiple grievances alerting defendants to such health and safety violations, numerous correctional officers at High Desert State Prison ("HDSP") continued to serve meals without wearing masks over their noses.  Plaintiff contracted COVID-19 twice in 2020, experiencing weakness, pain, difficulty breathing, fever and dizziness, and is fearful he will contract it again.  (ECF No. 1 at 16.)  Plaintiff seeks money damages and

////

1  injunctive relief, including an order enjoining defendants from continuing their policy and custom

2  of serving meals without face masks covering their noses.  (ECF No. 1 at 19.)

3  II.  <u>Summary Judgment Legal Standards</u>

4         Summary judgment is appropriate when it is demonstrated that the standard set forth in

5  Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the

6  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

7  judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears
> the initial responsibility of informing the district court of the basis
> for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

12  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

13  56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need

14  only prove that there is an absence of evidence to support the non-moving party's case."  <u>Nursing</u>

15  <u>Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)</u>, 627 F.3d 376,

16  387 (9th Cir. 2010) (citing <u>Celotex Corp.</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 56 Advisory

17  Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial

18  burden of production may rely on a showing that a party who does have the trial burden cannot

19  produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

20  should be entered, after adequate time for discovery and upon motion, against a party who fails to

21  make a showing sufficient to establish the existence of an element essential to that party's case,

22  and on which that party will bear the burden of proof at trial.  <u>Celotex Corp.</u>, 477 U.S. at 322.

23  "[A] complete failure of proof concerning an essential element of the nonmoving party's case

24  necessarily renders all other facts immaterial."  <u>Id.</u> at 323.

25         Consequently, if the moving party meets its initial responsibility, the burden then shifts to

26  the opposing party to establish that a genuine issue as to any material fact actually exists.  <u>See</u>

27  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to

28  establish the existence of such a factual dispute, the opposing party may not rely upon the

allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By notice filed December 15, 2022 (ECF No. 71-3), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

III.  Undisputed Facts[1] ("UDF")

1.  At all times relevant, plaintiff was a prisoner incarcerated at High Desert State Prison ("HDSP").

2.  During the incidents at issue here, defendants were employed at HDSP:  Brian Kibler was Warden, J. Pickett was the Chief Deputy Warden, R. Peery was an Associate Warden, and A. Pannu was a Correctional Officer.

3.  Plaintiff alleges that he was denied the right to be protected in violation of the Eighth Amendment when correctional staff and inmate workers served breakfast and dinner trays without wearing facial coverings over their mouths and noses, causing plaintiff to be diagnosed with COVID-19 on November 11, 2020.  (ECF No. 1 at 3, 8-9.)

4.  Plaintiff alleges that he notified defendants Kibler, Pickett, and Peery concerning the failure of staff and inmate workers to wear facial coverings when serving meals through letters and grievances; and that Kibler, Pickett and Peery deliberately disregarded the threat to plaintiff's safety and failed to remedy the wrong alleged, allowing staff and inmate workers to ignore directions to wear facial coverings, causing plaintiff to be diagnosed with COVID-19.  (ECF No. 1 at 15-16.)

5.  Plaintiff arrived at HDSP on September 22, 2020.  (ECF No. 1 at 8.)

6.  Plaintiff tested negative for COVID-19 on October 5, 2020.  (Id., ECF No. 83 at 45.)

7.  After quarantining for two weeks, plaintiff was housed in Facility B, Building 2.

////

////

---

[1]  For purposes of summary judgment, the undersigned finds these facts are undisputed.  Where plaintiff failed to properly address defendant's assertion of fact as required, this Court considers the fact undisputed.  See Fed. R. Civ. P. 56(e)(2).

8.  After being diagnosed with COVID-19 on November 11, 2020, plaintiff has not been diagnosed with this disease a second time, contrary to his verified statement in his complaint (ECF No. 1 at 16).  (Pl.'s Dep. at 25:14-25.)[2]

9.  Plaintiff transferred from HDSP to the Substance Abuse Treatment Facility ("SATF") on May 27, 2021.  (Pl.'s Dep. at 22:15-22.)

10.  Plaintiff transferred from SATF to the Richard J. Donovan Correctional Facility ("RJD") on April 12, 2022.  (ECF No. 56.)

11.  Plaintiff had no face-to-face contact with defendants Kibler, Pickett, or Peery concerning facial coverings at HDSP.  (Pl.'s Dep. at 102:14-25.)

12.  Plaintiff wrote his first letter to Warden Kibler concerning staff and inmate workers not wearing facial coverings at HDSP on November 20, 2020, after his COVID-19 diagnosis, and did not write a letter to Kibler concerning this issue prior to the diagnosis.  (Pl.'s Dep. at 104:17-23.)

13.  Prior to plaintiff's positive diagnosis, plaintiff did not receive a response to his inmate grievances concerning staff and inmate workers wearing facial coverings.  Plaintiff does not know if defendants Kibler, Peery, or Pickett received the results of the interview(s) concerning these grievances prior to plaintiff's positive diagnosis.  (Pl.'s Dep. at 106:16-107:25 (plaintiff denied knowing whether or not defendants Kibler, Peery or Pickett received the results of these interviews prior to plaintiff's diagnosis.)[3]

---

[2]  Defendants' exhibits are appended to their statement of undisputed facts (ECF No. 71-2). References to plaintiff's deposition refer to the page numbers within the deposition transcript. (ECF No. 71-2 at 8-26 (Pl.'s Dep.).)  References to defendants' declarations refer to the internal page numbers of their declarations.  (ECF No. 71-2 at 28-43 (Defts.' Decls.).)

[3]  Plaintiff now denies that such defendants were not aware of the complaints in plaintiff's grievances prior to plaintiff's positive diagnosis, referring to plaintiff's own declaration.  (ECF No. 83 at 25.)  Plaintiff declares that he reviewed each defendant's declaration and claims none of them denied they were aware of such complaints prior to plaintiff's positive diagnosis.  (ECF No. 83 at 31.)  But plaintiff overlooks each defendant's statement concerning when each became aware of plaintiff's complaints, and none of them pre-date plaintiff's positive diagnosis on November 11, 2020.  (ECF No. 71-2 at 29 (January 21, 2021 - Kibler); 36 (December 15, 2020 - Pickett); and 41 (February 22, 2021 - Peery).  Importantly, plaintiff points to no evidence demonstrating each defendant was aware of plaintiff's complaints prior to November 11, 2020.

14.  Plaintiff testified that he could not say whether, prior to the November 11, 2020 diagnosis, he came into contact with anyone else who may have been infected with COVID-19 other than contact with staff and inmate workers during meal service.  (Pl.'s Dep. at 108:2-109:1.)  Plaintiff tried to stay away from people, did not go to yard or dayroom, and only came out of his cell to use the telephone.  (Id.)

15.  Plaintiff first came into contact with defendant Pannu in December 2020, after the November 11, 2020 diagnosis.  (Pl.'s Dep. at 103:2-10.)

16.  Defendants Kibler, Pickett, and Peery were familiar with the memoranda issued by CDCR concerning facial coverings to be worn by inmates and correctional staff issued in connection with the COVID-19 pandemic, including memoranda dated October 27, 2020, and December 11, 2020.  (Defts' Decls. Kibler at 1:25-28; Pickett at 1:24-27; Peery at 1:25-2:1.)

17.  Defendants Kibler, Pickett, and Peery participated in enforcing CDCR requirements concerning facial coverings worn by correctional staff by ensuring that correctional staff were trained concerning these requirements; ensuring that building tours were conducted to monitor the proper wearing of facial coverings; tracking non-compliance; and holding staff accountable for noncompliance through progressive discipline.  (Kibler Decl. at 1:28-2:9; Pickett Decl. at 1:27-2:8; Peery Decl. at 2:8-14.)  Plaintiff denies this, claiming that videos of the meal service demonstrate staff and inmate porters failed to properly wear masks, despite such requirements, and is supported by declarations provided by plaintiff and other inmates attesting to such continued failure.  (ECF No. 83 at 25, citing ECF No. 83 at 32, 215-18.)

18.  Correctional staff working at Facility B at HDSP in November 2020 were subjected to progressive discipline if they did not comply with facial covering requirements.[4]  (Defts.' Ex.

---

[4]  Plaintiff denies this fact, citing his own declaration.  (ECF No. 83 at 26.)  Plaintiff declares that the failure of grievance officials to classify his grievances as staff misconduct complaints meant that no staff misconduct occurred, and thus defendants had no basis or reason to take steps to ensure staff compliance.  (ECF No. 83 at 32.)  Plaintiff's argument is not persuasive.  The prison grievance process is separate from the day-to-day operation of the prison.  How grievance officials classify inmate grievances has no bearing on how defendants enforced or failed to enforce prison regulations.  Plaintiff also points to his evidence demonstrating continued noncompliance with proper mask wearing regulations.  But the continued noncompliance does not rebut defendants' evidence that progressive discipline was imposed.

1   E, Redacted Non-Compliance Log; Ex. F, Redacted Non-Compliance Log.)

2          19.  Defendants Kibler, Pickett, and Peery enforced the requirements for inmate workers

3   to wear facial coverings by ensuring that the policies concerning facial coverings were distributed

4   to inmates; announcements concerning the policies were made on the facilities; Personal

5   Protective Equipment ("PPE") was made available to inmates; and correctional staff enforced the

6   policies through verbal counseling, removal of inmates from their positions, and issuing Rules

7   Violation Reports ("RVR's") for failure to comply.[5]  (Kibler Decl. at 1:28-2:5; Pickett Decl. at

8   2:9-13; Peery Decl. at 2:3-7.)

9          20.  When Defendants Kibler, Pickett, and Peery became aware of allegations of

10  noncompliance with facial covering requirements, they took steps to ensure staff compliance

11  with the requirements, including training, tracking non-compliance, and instituting progressive

12  discipline; and took steps to ensure inmate workers' compliance through verbal counseling,

13  removal from job positions, and issuing Rules Violation Reports ("RVR's").[6]  (Kibler Decl. at

14  2:10-18; Pickett Decl. at 2:14-23; Peery Decl. at 2:15-20.)

15         21.  Plaintiff does not know the date he contracted COVID-19.  (Pl.'s Dep. at 60:6-9;

16  64:1-2; 64:11; and 69:12-19.)

17         Exhaustion of Administrative Remedies - Defendant Pannu

18         22.  Under the mailbox rule, plaintiff filed this action on April 19, 2021.[7]  Houston v.

19  Lack, 487 U.S. 266, 275-76 (1988) (pro se prisoner filing is dated from the date prisoner delivers

20  it to prison authorities).

21         23.  Plaintiff submitted a grievance that mentions defendant Pannu; such grievance was

22

23  [5]  Plaintiff denies this fact, citing his own declaration.  (ECF No. 83 at 26.)  But again, the fact

24  that violations continued to occur does not rebut defendants' evidence that such enforcement
    steps were taken.

25  [6]  Plaintiff denies this fact, citing his own declaration.  (ECF No. 83 at 26.)  But continuing

26  violations do not rebut defendants' evidence that such enforcement steps were taken.

27  [7]  Plaintiff signed the complaint on April 17, 2021.  (ECF No. 1 at 19; Pl.'s Dep. at 41:8-16.)  The
    complaint does not contain a proof of service by mail, but plaintiff now declares that on April 19,
28  2021, he handed his complaint to Officer O'Shea for mailing.  (ECF No. 83 at 32.)

1   dated March 19, 2021, given log number 100835, and denied on May 6, 2021.  (Pl.'s Dep. at

2   50:7-20; ECF No. 83 at 113.)  Plaintiff signed his appeal in log number 100835 on May 15, 2021,

3   which was submitted to the Office of Appeals which received it on May 28, 2021.  (Id.)

4         24.  On March 1, 2021, plaintiff signed grievance log number 94408 concerning defendant

5   Pannu, and it was denied on April 10, 2021.  (Pl.'s Dep. at 51:7-22; ECF No. 83 at 96, 99.)  On

6   April 16, 2021, plaintiff signed his appeal in log number 94408.  (ECF No. 83 at 103.)  The

7   Office of Appeals received the appeal on May 7, 2021.[8]  (ECF No. 83 at 104.)

8         25.  Plaintiff understood that, in 2021, the Office of Appeals had sixty days to respond to

9   an appeal.  (Pl.'s Dep. at 46:3-4; see also Cal. Code Regs., tit. 15, § 3486(i).

10        26.  In his verified complaint, plaintiff acknowledged that an administrative remedy was

11   available at HDSP.  (ECF No. 1 at 2.)

12   IV.  The Parties' Evidence

13        Plaintiff provided his own declaration, COVID-19 test result, grievances, and responses

14   thereto, discovery responses, copies of CDCR memos, declarations of other inmates, timekeeping

15   and reporting logs for inmate porters, and correspondence between plaintiff and defendant Kibler.

16   (ECF Nos. 1 at 20-111; 83 at 29-282.)

17        Defendants provided portions of plaintiff's deposition, declarations of defendants,

18   redacted non-compliance logs for Facility B at HDSP, and a statement of number of reports

19   increased from last submission (HDSP).  (ECF No. 71-2 at 8-49.)

20   ////

21   ////

22   ////

23   _____

24   [8]  Defendants contend that plaintiff submitted his appeal of log number 94408 the day before
plaintiff submitted the instant complaint for filing based on plaintiff's deposition testimony (Pl.'s
25   Dep. at 51:7-22).  However, plaintiff testified "On or about April 16th, 2021.  I'm not sure that's
accurate." and responded, "I think so," when asked if that was the day before plaintiff submitted
26   the complaint to the court for filing.  (Pl.'s Dep. at 51.)  Plaintiff now declares he gave the appeal
to Officer O'Shea on May 3, 2021, for mailing.  (ECF No. 83 at 34.)  But the date plaintiff
27   submitted the appeal is not material.  What is material is that the appeals office had no
opportunity to respond to the appeal before plaintiff filed the instant action on April 19, 2021
28   (under the mailbox rule).

1 V. Discussion

2      A. Failure to Exhaust re Defendant Pannu

3        Exhaustion Standards

4     The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be

5 brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a

6 prisoner confined in any jail, prison, or other correctional facility until such administrative

7 remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion

8 requirement applies to all inmate suits about prison life, whether they involve general

9 circumstances or particular episodes, and whether they allege excessive force or some other

10 wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

11     To satisfy the exhaustion requirement, a prisoner must file a grievance alerting prison

12 officials to the claims the plaintiff included in the complaint with the level of detail required by

13 the grievance system itself. Jones v. Bock, 549 U.S. 199, 218-19 (2007); Porter, 534 U.S. at 524-

14 25 (the purpose of the exhaustion requirement is to give officials the "time and opportunity to

15 address complaints internally before allowing the initiation of a federal case"). All claims alleged

16 by an inmate in a federal lawsuit against prison officials must be exhausted before the inmate files

17 the lawsuit; unexhausted claims must be dismissed without prejudice. Booth v. Churner, 532

18 U.S. 731, 736, 741 (2001); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002)

19 (exhaustion must occur prior to filing suit and plaintiff may not exhaust while suit is pending).

20     CDCR Grievance Process

21     For grievances received by prison officials on or after June 1, 2020, the California prison

22 grievance system has two levels of review. Cal. Code Regs. tit. 15, §§ 3480-3487. Section

23 3481(a) provides that an inmate can "submit a written grievance containing one or more claims

24 . . . to dispute a policy, decision, action, condition, or omission by the Department or

25 departmental staff that causes some measurable harm to their health, safety, or welfare." Id.,

26 § 3481(a). Section 3482(c) directs that an inmate must follow this procedure to submit a

27 grievance:

28 *////*

(1) type or print legibly on an official form CDCR 602-1 (03/20) or complete the form electronically, if available;

(2) describe all information known and available to the claimant regarding the claim, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the claimant's knowledge;

(3) describe any attempt to resolve the claim informally and, if there was such an attempt, provide the details of that attempt, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and the results of that attempt, to the best of the claimant's knowledge;

(4) include all supporting documents available to the claimant related to the claim or identify to the best of the claimant's ability all relevant records with sufficient specificity for those records to be located; and

(5) sign and date the form CDCR 602-1 (03/20).

Cal. Code Regs. tit. 15, § 3482(c).  An inmate must submit the grievance within 30 days of the incident he is challenging.  Id., § 3482(b).

Once an inmate has submitted a CDCR 602-1, the Institutional or Regional Office of Grievances ("OOG") must provide a written decision that clearly explains the reasoning for its decision as to each claim contained in the grievance. Cal. Code Regs. tit. 15, § 3481(a).  Within 30 days of the OOG decision, the inmate may appeal to the Office of Appeals ("OOA"), which must also provide a written decision to the inmate that clearly explains the reasoning for its decision as to each of the inmate's claims.  Id., §§ 3481(a), 3485(b).  The regulations provide that the grievance is exhausted once the OOA completes its review.  Id., § 3486(m).

The regulations set forth two principal time constraints on officials reviewing an inmate's grievance.  First, an official who receives a grievance, either at the OOG or the OOA level of review, must provide the inmate with a notice of receipt within 14 days of filing.  Id., § 3483(f), 3486(f).  The notice must include the date the grievance was received and the deadline for authorities to respond to the grievance.  Id.  The response deadline is provided in §§ 3483(i) for the OOG and 3486(i) for the OOA -- both entities have 60 days from the date of receipt to issue their written responses to the grievance unless a shorter time period is mandated by other law.

////

1          Burden Re Exhaustion

2          A defendant bears the burden of establishing that a plaintiff failed to exhaust an available

3    administrative process.  Fordley v. Lizarraga, 18 F. 4th 344, 350-51 (9th Cir. 2021).  If a

4    defendant meets its initial burden to show failure to exhaust an available administrative process,

5    the burden shifts to the plaintiff to show that the process was not available to him.  Id. at 351.  But

6    the "ultimate burden of proving that the inmate has not exhausted his claims remains with the

7    defendants."  Id. (citing Draper v. Rosario, 836 F.3d 1072, 1079 (9th Cir. 2016).)

8          Administrative Remedy Unavailable

9          An administrative remedy is not available (and thus exhaustion is not required) where:

10   (1) the administrative process is a dead end because prison officials are consistently unable or

11   unwilling to provide any relief via that process; (2) the process is so opaque that no ordinary

12   prisoner could navigate it; and (3) officials thwart the prisoner's attempts to use the process

13   "through machination, misrepresentation, or intimidation."  Ross v. Blake, 578 U.S. 632, 643-44

14   (2016).  The Ninth Circuit has held that a prison's complete failure to process a grievance renders

15   the administrative process unavailable.  Andres v. Marshall, 867 F.3d 1076, 1079 (9th Cir. 2017).

16   The failure to timely process a grievance may render the process unavailable depending on the

17   circumstances.  Fordley, 18 F.4th at 350,  354-55.

18              Discussion

19          Initially, the undersigned observes that plaintiff has no constitutional right to a specific

20   grievance process.  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding there is no

21   liberty interest entitling inmates to a specific grievance process); Mann v. Adams, 855 F.2d 639,

22   640 (9th Cir. 1988).  A prison official's denial of a grievance does not itself violate the

23   Constitution.  Evans v. Skolnik, 637 F. App'x 285, 288 (9th Cir. 2015).  Thus, whether or not a

24   specific defendant granted or denied a specific grievance, or improperly categorized a grievance,

25   cannot violate plaintiff's due process rights.  See, e.g., Bradway v. Rao, 2020 WL 8919180, at *1

26   (E.D. Cal. July 15, 2020); Daniels v. Aguillera, 2018 WL 558658, at *1 (E.D. Cal. Jan. 24, 2018),

27   report and recommendation adopted, Daniels v. Aguillera, 2018 WL 1763311 (E.D. Cal. Apr. 12,

28   2018) ("Because there is no right to any particular grievance process, it is impossible for due

11

1  process to have been violated by ignoring or failing to properly process prison grievances.").

2  Moreover, plaintiff's allegations that defendants failed to process or investigate his

3  grievances in conformity with prison policy or regulations fail to state a federal claim.  Violations

4  of state prison rules and regulations, without more, do not support any claims under section 1983.

5  Ove v. Gwinn, 264 F.3d 817, 824 (9th Cir. 2001); Sweaney v. Ada County, Idaho, 119 F.3d 1385,

6  1391 (9th Cir. 1997).  There is no liability under § 1983 for violating prison policy.  Cousins v.

7  Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting Gardner v. Howard, 109 F.3d 427, 430

8  (8th Cir. 1997)).  Only if the events complained of rise to the level of a federal statutory or

9  constitutional violation may a prisoner pursue them under section 1983.  See Nurre v. Whitehead,

10  580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of

11  federal constitutional right).  Thus, complaints that prison officials violated state regulations

12  regarding the inmate appeals process will not support a claim for denial of due process under

13  federal law.

14  Despite plaintiff's arguments to the contrary, the undersigned finds that the CDCR

15  provided administrative remedies that were available to plaintiff.  While plaintiff argues that the

16  appeals process was rendered unavailable to him, the record confirms that his grievances were

17  denied for specific reasons set forth in the responses,[9] and the fact that such grievances were

18  denied, even if the language in the response appears to be duplicative or "mirror images" (ECF

19  No. 83 at 34), does not demonstrate the appeals process was rendered unavailable.  Plaintiff

20  contends that prison officials' failure to investigate, properly characterize or address plaintiff's

21  allegations in such administrative grievances demonstrates the administrative appeals process was

22  rendered unavailable.  But plaintiff provides no legal authority supporting such arguments, and

23  this court finds his arguments unpersuasive.  Plaintiff's efforts to intertwine the substance of his

24  grievances with the administrative appeals process itself are unavailing and not supported by law.

25  The record demonstrates that plaintiff did not wait for a second level decision before

26  bringing the instant action on April 19, 2021.  Indeed, in his deposition, plaintiff confirmed he

27

28  [9]  See ECF No. 1 at 55-56, 72-73, 88-90; ECF No. 83 at 51, 54-55, 60, 64, 69-70, 74, 79-80, 84, 89-90, 94, 99-101, 105, 110-11, 115, 120-21.

12

filed the instant action before the 60-day period expired.  (Pl.'s Dep. at 46.)  The responses to grievance log no. 94408 and grievance log no. 100835 were not due until July 6, 2021, and July 27, 2021, respectively.  Yet plaintiff filed the instant complaint on April 19, 2021, before the appeals office had even received plaintiff's appeals.

Plaintiff is correct that grievance responses were provided late.  But plaintiff did not wait for the response deadline to pass before he filed the instant action.  Thus, administrative remedies remained available at the time plaintiff filed the instant action.  See Rodriguez v. Enlers, 2022 WL 223937, *4-6  (E.D. Cal., Jan. 25, 2022) (where remedies remained available, exhaustion not properly completed), adopted, 2022 WL 1004746 (E.D. Cal., April 1, 2022).  Because the response time had not expired before plaintiff filed the instant action, he failed to properly exhaust his administrative remedies prior to bringing a court action.

Further, plaintiff's deposition testimony demonstrates plaintiff intentionally filed the instant complaint before the 60-day period expired because he mistakenly believed he could seek injunctive relief prior to exhausting his administrative remedies.  (Pl.'s Dep. at 46:14-20.)  But plaintiff's mistaken belief about filing his complaint in federal court does not support his claim that the administrative remedies were a dead end or rendered unavailable.

Therefore, defendant Pannu is entitled to summary judgment based on plaintiff's failure to properly exhaust administrative remedies prior to filing the instant action.

B.  Eighth Amendment Claims

Defendant Pannu

Because plaintiff failed to exhaust his claims as to defendant Pannu prior to filing this action, the undersigned does not reach plaintiff's Eighth Amendment claims against defendant Pannu.

Remaining Defendants Kibler, Pickett & Peery

All of the remaining defendants held supervisorial roles:  Brian Kibler was Warden, J. Pickett was the Chief Deputy Warden, and R. Peery was an Associate Warden.

Eighth Amendment Governing Standards

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S.

13

Const. Amend. VIII.  "The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement."  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (as amended) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)); see also Helling v. McKinney, 509 U.S. 25, 33 (1993) ("It is cruel and unusual punishment to hold convicted criminals in unsafe conditions." (internal quotation marks and citation omitted)).  The Eighth Amendment imposes duties on prison officials who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care, and personal safety.  See Farmer, 511 U.S. at 832.  Thus, prison officials have a duty to protect inmates from serious, communicable diseases.  See Helling, 509 U.S. at 33 (prison officials may not "be deliberately indifferent to the exposure of inmates to a serious, communicable disease").

A prison official violates the Eighth Amendment when two requirements are met:  (1) the deprivation alleged must be, objectively, sufficiently serious, and (2) the prison official possesses a sufficiently culpable state of mind.  Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 297-98 (1991)).

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  Farmer, 511 U.S. at 837.  The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference."  Id.

Linkage Requirement

To prevail on a claim under § 1983, a plaintiff must demonstrate:  (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation.  See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v.

14

1    Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978).  That is, plaintiff may not sue any official on the

2    theory that the official is liable for the unconstitutional conduct of his or her subordinates.

3    Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  The requisite causal connection between a

4    supervisor's wrongful conduct and the violation of the prisoner's constitutional rights can be

5    established in a number of ways, including by demonstrating that a supervisor's own culpable

6    action or inaction in the training, supervision, or control of his subordinates was a cause of

7    plaintiff's injury.  Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011).

8              Discussion

9              Initially, as to the objective element, there is no question that COVID-19 is a serious

10   communicable disease.  Plata v. Newsom, 445 F. Supp. 3d 557, 559 (N.D. Cal. Apr. 17, 2020)

11   ("[N]o one questions that [COVID-19] poses a substantial risk of serious harm" to prisoners.).

12             As to the subjective prong, there is no evidence showing that defendants Kibler, Pickett,

13   and Peery were aware of plaintiff's complaints concerning non-compliance with facial covering

14   requirements at HDSP prior to plaintiff's positive diagnosis on November 11, 2020.  Indeed,

15   plaintiff concedes he had no face-to-face contact with any of these defendants, and his written

16   complaints to defendant Kibler were all submitted after his positive diagnosis.  Plaintiff's

17   grievances concerning the facial coverings were not reviewed by defendants Peery or Pickett until

18   after plaintiff was infected.  (ECF No. 83 at 70 (Jan. 25, 2021); 80 (Feb. 2 & 22, 2021); 90 (Feb.

19   26, 2021); 101 (Apr. 9, 2021); & 111 (May 5, 2021).  Therefore, plaintiff fails to demonstrate

20   each defendant knew of and disregarded an excessive risk to plaintiff's health or safety in

21   connection with plaintiff contracting COVID-19 by November 11, 2020, based on his allegations

22   that prison staff and inmate porters were not correctly wearing facial coverings during meal

23   service.

24             Plaintiff provided copies of CDCR memos dated October 27, 2020, and December 11,

25   2020, addressing the requirements for facial coverings (ECF No. 1 at 58-60), and defendants

26   Kibler, Pickett and Peery acknowledge their familiarity with such memos.  The December 11,

27   2020 memo clarified that all inmates were required to correctly wear face coverings which shall

28   cover the nose, mouth and chin, and the failure to do so would subject the inmate to progressive

1   discipline.  (ECF No. 1 at 58.)

2       Plaintiff adduced evidence showing that improper facial coverings persisted even after

3   November 11, 2020.  Plaintiff's complaint and declarations list myriad violations he witnessed.

4   (ECF No. 1 at 9-15, 25-27, 31-36, 94-106.)  Plaintiff provided declarations by other inmates who

5   witnessed such violations.  (ECF No. 1 at 110 (inmate Hayde Decl.) (after contracting COVID-19

6   in November 2020, Hayde "daily witnessed correctional officers and porters serving inmate food

7   in Building No. 4 without wearing face mask[s] covering their mouth[s] and nose[s]"); 111

8   (inmate Dverksen Decl.) (Dverksen, a third watch porter, declares he was authorized by

9   correctional officers to serve food items and trays without having to wear a face mask covering

10  his mouth and nose and denies receiving training on proper mask wearing or orders directing him

11  to wear a mask covering his mouth and nose when serving meals; Dverksen witnessed porters and

12  officers over months serve Dverksen's meals without a mask covering their mouths and noses).

13  Inmate Perales declares he was a second watch porter who served breakfast meals along with staff

14  without wearing a face covering on a regular basis and was permitted to do so with staff

15  authorization.  (ECF No. 83 at 215.)  Perales was not fired or given an RVR for serving meals

16  without proper facial covering and does not "recall/know of a porter in building 4 who was

17  subjected to such sanctions.  (Id.)  See also ECF No. 83 at 216 (inmate Hassan Decl.) (during his

18  housing in Building 4 he witnessed staff and inmate porters serving breakfast and dinner meals

19  without properly wearing face coverings in 2020 and in 2021); 217 (inmate Charles Decl.)

20  (same); 218 (inmate Bell Decl.) (same).  Inmate Bell also does not recall any inmate porter being

21  fired for face mask violations and claims that "masking protocols were never seriously enforced

22  at any time during Bell's confinement at HDSP."  (ECF No. 83 at 218.)  The improper facial

23  coverings persisted until plaintiff transferred away from HDSP on May 27, 2021.

24      Clearly, defendants' efforts to enforce proper facial coverings were inadequate.  But

25  plaintiff's evidence does not demonstrate that defendants Kibler, Pickett or Peery condoned such

26  improper facial covering or, as argued by plaintiff, did nothing.

27      Defendants' evidence demonstrates that facial covering requirements were put in place

28  and when noncompliance became evident, additional steps were taken to enforce proper facial

coverings.  That defendants' efforts were not perfect in that the progressive discipline failed to obtain the compliance of everyone, or in that not every violator was subjected to discipline, does not demonstrate that the steps defendants put in place were not reasonable.  That a few inmates do not recall anyone being disciplined for failing to properly wear a mask is insufficient to rebut defendants' evidence demonstrating that progressive discipline was imposed.

Plaintiff contends that defendants Kibler, Pickett and Peery "repeatedly denied any misconduct and took no efforts to ensure officers and porters' compliance with the requirements" (ECF No. 88 at 3), and claims such failures were the moving force behind plaintiff contracting COVID-19 and facing the risk of re-infection.[10]  However, the record demonstrates myriad efforts defendants took to enforce the CDCR requirements for face-covering.  "In examining whether a prison official subjectively acted with deliberate indifference to the risk of COVID-19, the key inquiry is not whether the official responded perfectly, complied with every CDC guideline, or completely averted the risk; instead, the key inquiry is whether she [or he] responded reasonably to the risk."  Fuller v. Amis, 2023 WL 3822057, at *4 (C.D. Cal. Apr. 13, 2023) (internal quotation omitted), report and recommendation adopted, 2023 WL 3819181 (C.D. Cal. June 2, 2023); Martinez v. Sherman, 2022 WL 126054, at *6 (E.D. Cal. Jan. 13, 2022) (internal citation omitted); Benitez v. Sierra Conservation Center, 2021 WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021), report and recommendation adopted, 2021 WL 4593841 (E.D. Cal. Oct. 6, 2021) (citation omitted); see also Plata, 445 F. Supp. 3d at 564 ("The question is whether [p]laintiffs have demonstrated that [d]efendants' response to the COVID-19 epidemic is unreasonable.").  Prison officials respond reasonably to the risk when they have "not disregarded a known risk" even if the prison's response has been inadequate.  Benitez, 2021 WL 4077960, at *6.

---

[10]  Plaintiff also alleges that defendants Kibler, Pickett and Peery were "responsible for ensuring the safety and well-being of prisoners under [their] supervision."  (ECF No. 1 at 7.)  But plaintiff is required to demonstrate each defendant's acts or omissions that caused plaintiff's injury.  To the extent plaintiff seeks to impose liability simply based on each of these defendant's supervisorial roles, such effort is unavailing.  Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior.  Ashcroft, 556 U.S. at 676-77; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

As argued by defendants, plaintiff failed to rebut evidence that reasonable steps were taken to enforce proper face wearing protocols.  Defendant Kibler instituted training for correctional staff, made sure building tours of supervisory staff were conducted to monitor the proper wearing of facial coverings, and ensured that non-compliance was tracked, that correctional staff were held accountable for non-compliance through progressive discipline, and that inmates were held accountable for non-compliance through verbal counseling and the issuance of RVR's.  (ECF No. 71-2 at 28-30.)  When Kibler became aware of non-compliance with facial covering requirements, he instituted additional training for correctional staff, ensuring that non-compliance was tracked, that correctional staff were held accountable for non-compliance through progressive discipline, and that inmates were held accountable for non-compliance through verbal counseling and the issuance of RVR's.  (ECF No. 71-2 at 29-30.)

Defendant Pickett participated in enforcement efforts by ensuring that correctional staff were trained concerning these requirements; conducting numerous staff meetings to discuss the requirements and the need to comply with them; ensuring that building tours were conducted to monitor the proper wearing of facial coverings, including tours by the Office of the Inspector General, health care executives, and CDCR Associate Directors; and ensuring that non-compliance was tracked and that correctional staff were held accountable for non-compliance through progressive discipline.  (ECF No. 71-2 at 35.)  As to inmate workers, CDCR policies concerning facial coverings were distributed to inmates; announcements concerning the policies were made on the facilities; PPE was made available to inmates; and correctional staff enforced the policies through verbal counseling, removal of inmates from their positions, and issuing RVR's for failure to comply.  (Id.)  Upon learning of non-compliance with facial covering policies, defendant Pickett made sure that non-compliance was tracked; that correctional staff were held accountable for non-compliance through progressive discipline; and that inmate workers were held accountable through verbal counseling, removal from their positions, and issuing RVR's, as appropriate.  (Id.)

Defendant Peery also took steps to enforce the CDCR policies concerning facial coverings.  As to inmate workers, Peery ensured that the policies concerning facial coverings

18

1   were distributed to inmates; announcements about the policies were made to the facilities; PPE

2   was made available to inmates, and correctional staff enforced such policies through verbal

3   counseling, removal of inmates from their positions, and issuing RVR's for failure to comply.

4   (ECF No. 71-2 at 41.)  As to correctional staff, Peery was involved in enforcing such policies by

5   ensuring that correctional staff were trained concerning such requirements, that building tours

6   were conducted to monitor the proper wearing of facial coverings, tracking non-compliance, and

7   holding staff accountable for non-compliance through progressive discipline.  (Id.)  When Peery

8   became aware of complaints of non-compliance, Peery confirmed non-compliance, then took

9   steps to ensure compliance was completed, including training, tracking non-compliance, and

10   instituting progressive discipline for correctional staff and verbal counseling, removal from job

11   positions, and issuing RVR's to inmate workers.  (Id.)

12          All three defendants provided evidence of tracking of noncompliance, including discipline

13   for such non-compliance.  (ECF No. 71-2 at 31-32, 37-38, 42-43, 45-46, 48-49.)

14          Finally, it is undisputed that PPE was provided to inmates.  Plaintiff argues that the inmate

15   appeal responses by defendants Pickett and Peery that "the department has also provided a face

16   mask to you and all other CDCR inmates to protect themselves from contracting the virus when

17   interacting with other staff or inmates" (ECF No. 83 at 70, 79, 89, 99, 110-11, & 121) raises a

18   dispute about defendants' knowledge of the condition and the refusal to take steps to prevent it.

19   (ECF No. 1 at 15.)  But such statement does not rebut defendants' evidence of steps taken to

20   enforce facial covering requirements.[11]  The record amply demonstrates defendants were aware of

21   COVID-19 and its risks and took steps to ensure prison staff and inmates complied with facial

22   covering policies.  Moreover, providing inmates with masks enabled inmates, including plaintiff,

23

24   _____

25   [11]  Such appeal responses identified additional steps the CDCR took to protect the inmate
     population, including required testing of all adult institutions statewide; surveillance testing of

26   inmates at all adult institutions; encouraged social distancing, wearing of masks, and hand
     washing; ordered mandatory health screening of staff before entering CDCR facilities; deep

27   cleaning throughout the facilities; and increased supply of disinfectants, soap, hand sanitizer and
     PPE.  (Id.)

28

1  to wear a mask during meal deliveries to minimize exposure.[12]

2      Although plaintiff declares he saw no supervisory staff during his mealtimes (ECF No. 83

3  at 32-33), his observations are limited to such meal service and do not demonstrate defendants

4  Kibler, Pickett or Peery did not come to Facility B at other times to enforce the face-covering

5  requirements.  Also, plaintiff did not adduce evidence contradicting that correctional staff

6  working at Facility B were subject to progressive discipline if they did not comply with proper

7  face covering.

8      Plaintiff contends no efforts to enforce proper facial covering took place because the video

9  evidence demonstrates that non-compliance persisted until plaintiff was transferred away from

10  HDSP on May 27, 2021.  But as multiple courts have stated, the key issue is whether defendants

11  responded reasonably to the risk.  See Burgess v. Newsom, 2021 WL 4061611, at *4 (E.D. Cal.

12  Sept. 7, 2021), report and recommendation adopted, 2021 WL 4975140 (E.D. Cal. Oct. 25, 2021)

13  (finding no supervisory liability and dismissing complaint against warden, which alleged failures

14  to enforce social distancing to control the spread of COVID-19, explaining that, "even if the

15  response at [the] Prison has been inadequate, there are insufficient allegations to demonstrate that

16  [the wardens or associate wardens] disregarded a known risk or failed to take any steps to address

17  the risk"); Kersh v. Gastelo, 2022 WL 1037754, at *4-5 (C.D. Cal. Feb. 28, 2022), report and

18  recommendation adopted sub nom. Kersh v. Gastelo, 2022 WL 1032389 (C.D. Cal. Apr. 6,

19  2022) (concluding that deviation from CDC guidelines did not show deliberate indifference as

20  long as defendants implemented reasonable measures to lower inmates' risk of contracting

21  COVID-19).  Here, part of the solution for the continued non-compliance was progressive

22  discipline which took time to impose because it began with verbal counseling.  While defendants'

23  responses may have fallen short in that the improper wearing of masks persisted for several

24  months, the continued failure to properly wear masks does not rebut defendants' efforts to impose

25  progressive discipline on the prison staff and inmate porters who failed to comply with proper

26

27  [12]  Plaintiff was not housed in an open bar cell.  Rather, he was housed in a cell with a solid door
   which had a long narrow window and a horizontal slotted food port through which meal trays

28  could be inserted.

1  facial covering requirements.  Nor does it demonstrate that the efforts taken by defendants were

2  unreasonable under the circumstances.

3      This record does not demonstrate that defendants Kibler, Pickett and Peery disregarded a

4  known risk or failed to take any steps to address such risk, or that the steps they took were

5  unreasonable.  Thus, the undersigned recommends that summary judgment be granted.

6      C.  Plaintiff's Alleged Injury

7      Plaintiff is African American and claims he is at higher risk of contracting COVID-19

8  based on his race.  (ECF No. 1 at 29.)  He identifies no underlying medical conditions that put

9  him at an increased risk for COVID-19.  Plaintiff contracted COVID-19 and tested positive on

10 November 11, 2020.  After he contracted COVID-19, plaintiff experienced weakness, pain,

11 difficulty breathing, fever and dizziness, and contends he was fearful he would be reinfected and

12 was afraid of food contamination.  (ECF No. 83 at 1, 8, 16)

13     Defendants argue they are entitled to summary judgment because plaintiff failed to adduce

14 evidence that he sustained a physical injury after he contracted COVID-19 by November 11,

15 2020, arguing that fear of reinfection, standing alone, is insufficient.[13]

16     Pursuant to the Prison Litigation Reform Act, a plaintiff must allege more than mental or

17 emotional injury.  42 U.S.C. § 1997e(e). The Ninth Circuit has interpreted section 1997e's

18 "physical injury" requirement to mean that it "need not be significant but must be more than de

19 minimis."  Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002).  Moreover, the Ninth Circuit has

20 clarified that "[t]he 'physical injury' requirement of  42 U.S.C. § 1997e(e) does not apply to

21 claims for compensatory, nominal, or punitive damages."  Renteria v. Williams, 340 F. App'x

22 382, 383 (9th Cir. 2009) (citing Oliver, 289 F.3d at 630).

23     Here, in addition to his fear of reinfection, plaintiff also alleges he contracted COVID-19

24 and suffered injuries from the disease, including difficulty breathing, weakness, pain, fever, and

25 dizziness.  The undersigned finds this is sufficient physical injury that is more than de minimis.

26

27 [13]  Defendants rely on out of circuit cases.  (ECF No. 85 at 7.)  See, e.g., Byrd v. Hobart, 2017
   U.S. Dist. LEXIS 237282 (C.D. Ill. Nov. 1, 2017) ("Byrd's fear [of contracting disease from
28 prison kitchen] is not a sufficient basis upon which to award nominal damages, punitive damages,
   or damages for his alleged psychological trauma.").

1   See Jones v. Pollard, 2022 WL 706926, at * 10 (S.D. Cal. March 9, 2022) (allegations prisoner

2   contracted COVID-19, suffered from chest pains, and racing heartbeats requiring medication

3   were more than de minimis physical injury).

4        D.   Claim for Injunctive Relief

5        In his complaint, plaintiff seeks injunctive relief enjoining defendants, officers, and

6   porters at HDSP from failing to properly wear face masks while handling and serving breakfast

7   and dinner meals.  Defendants contend that because plaintiff is no longer housed at HDSP, an

8   injunction issued against the defendants in this case would be of no effect.  (ECF No. 71-1 at 10-

9   11.)  Further, past exposure, absent continuing adverse effects, is insufficient, and plaintiff's

10  claim for injunctive relief is moot because there is no evidence the alleged conduct will recur.

11  Plaintiff did not address his request for injunctive relief in his opposition.

12       When a prisoner seeks injunctive relief concerning conditions at a prison, the prisoner's

13  claims for injunctive relief are moot when the prisoner is "no longer subject to the prison

14  conditions or policies he challenges."  Alvarez v. Hill, 667 F.3d 1061, 1064 (9th Cir. 2012).  An

15  exception to the mootness doctrine may apply where the alleged wrongs are "capable of repetition

16  yet evading review."  Ctr. for Biological Diversity v. Lohn, 511 F.3d 960, 964 (9th Cir. 2007).  A

17  claim is "capable of repetition, yet evading review" when (1) the challenged action is of limited

18  duration, too short to be fully litigated prior to its cessation or expiration, and (2) there is a

19  reasonable expectation that the same complaining party will be subjected to the same action

20  again.  Porter v. Jones, 319 F.3d 483, 489-90 (9th Cir. 2003).  Generally, a prisoner's release from

21  custody or transfer to another prison renders the request for injunctive relief moot, unless there is

22  a reasonable expectation of being transferred back or a probability that he will again be subjected

23  to the prison conditions from which he seeks.  Rodriguez v. Moore, 2019 WL 2284892, at *1

24  (E.D. Cal. May 29, 2019), findings and recommendations adopted, 2019 WL 3714510, at *1

25  (E.D. Cal. Aug. 7, 2019) (citations omitted); Gilbert v. Fernald, 2021 WL 1537043, at *3 (C.D.

26  Cal. Mar. 4, 2021), accepting findings and recommendations, 2021 WL 3666175, at *1 (C.D. Cal.

27  Aug. 17, 2021).

28       Plaintiff previously requested a preliminary injunction ordering HDSP prison staff and

1   inmate porters to be required to properly wear face masks when serving breakfast and dinner

2   trays.  (ECF No. 14.)  The undersigned recommended, <u>inter alia</u>, that the motion be denied as

3   moot because defendants provided evidence that prison policies concerning face coverings and

4   social distancing had been updated, and plaintiff was no longer housed at HDSP.  (ECF No. 26 at

5   5-6.)  The findings and recommendations were adopted, and the motion denied.  (ECF No. 33.)

6          Here, plaintiff does not argue that there is a reasonable expectation that he will be

7   subjected to the same conduct at a different prison, or that he will be transferred back to HDSP.

8   Thus, the undersigned finds plaintiff's request for injunctive relief should be denied as moot.

9   VI.  <u>Conclusion</u>

10         Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary

11   judgment (ECF No. 71) be granted.

12         These findings and recommendations are submitted to the United States District Judge

13   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

14   after being served with these findings and recommendations, any party may file written

15   objections with the court and serve a copy on all parties.  Such a document should be captioned

16   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

17   objections shall be filed and served within fourteen days after service of the objections.  The

18   parties are advised that failure to file objections within the specified time may waive the right to

19   appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

20   Dated:  December 27, 2023

21

22   KENDALL J. NEWMAN
     UNITED STATES MAGISTRATE JUDGE

23

24   /peyt0719.msj

25

26

27

28

                                    23